# OTTO LANGE v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

### Division Two, January 6, 1914.

1. **CONTRACTS: Insurance: Lex Loci: Special Provision for Foreign Law.** Where the application for a life insurance policy was made in New Mexico and the policy delivered there, it was a New Mexico contract, although the home office of the company was in New York; and the contract of insurance could be governed by the laws of New York only by virtue of a provision to that effect in the policy.

2. **——: ——: ——: ——: General and Special Provisions.** Where a New Mexico policy of life insurance provides that it shall be construed as though executed in New York, and by another of its terms expressly waives the notice of due-date of premiums and interest required by the statutes of New York, it is *held* that the specific provision waiving notice controls.

3. **——: ——: Estoppel in Pais: Agency.** Evidence in an action on a life insurance policy by an assignee *held* to justify a finding that the company was estopped by the acts of its cashier from claiming a forfeiture for failure to pay when due the extension note for part of a semiannual premium.

4. **ESTOPPEL IN PAIS: Wilful or Intentional Concealment.** The concealment or misleading need not be wilful or intentional in order to create an estoppel *in pais*. The important and primary ground of such estoppel is that it would be a fraud for one to assert what his previous conduct had denied when on the faith of that denial others have acted.

5. **PLEADING: Several Counts: Election.** Where the petition in an action on a policy of insurance contains three counts, each pleading execution of the policy and recognizing the non-payment of the premiums for which forfeiture is claimed by the company, and where (although some of the facts necessary to prove the allegations of one count are not required to prove the allegations of either of the other counts) it cannot be said that the facts necessary to prove any one of said counts disprove or contradict the state of facts necessary to support either of the other counts, the counts are not inconsistent and the plaintiff cannot be required to elect.

Appeal from Henry Circuit Court.—*Hon. C. A. Denton*, Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* and *O. W. Pratt* for appellant.

(1) The policy in controversy contains a waiver of notice of maturity of premium and this waiver dispenses with the necessity for compliance with the so-called New York Notice Law even if such law would otherwise be applicable. Life Ins. Co. v. Hill, 193 U. S. 551. (2) Even if the New York Notice Law were applicable (which it is not in view of the terms of the policy) notice of the expiration of the forebearance agreement is not required under the said law. Conway v. Ins. Co., 140 N. Y. 79; Banholzer v. Ins. Co., 78 N. E. (Minn.) 244. (3) The respondent took his assignment of the policy subject to all its then terms, conditions and burdens, including the agreements which the St. Vrains had made with reference thereto and which are recited in the so-called "blue note" agreement and in the policy loan agreement. (4) The relation of Dooley to the appellant company was such

that no estoppel such as is claimed by defendant could arise from his acts and conduct. Moreover, his acts and conduct were such that, regardless of his position with the company, they afford no ground for estoppel. (5) The respondent having acknowledged prior to the death of St. Vrain that the policy had lapsed and having participated in an application for reinstatement, cannot be heard now to complain that the policy had not lapsed. (6) The motion of the defendant below to require the plaintiff to elect as to the count under which he would proceed should have been sustained. Roberts v. Railroad, 43 Mo. App. 287; Soap Works Co. v. Sayers, 51 Mo. App. 314; Purdy v. Pfaff, 104 Mo. App. 331; Liese v. Myer, 143 Mo. 547; Scoville v. Glasner, 79 Mo. 449; Sauter v. Leveridge, 103 Mo. 621; Holt Co. v. Cannon, 114 Mo. 519.

*Botsford, Deatherage & Creason* for respondent.

(1) There being no inconsistency in point of fact between the matters stated in the three counts of plaintiff's amended petition, plaintiff was entitled to proceed and have the finding and judgment of the circuit court without an election, and that court did right in denying the motion to elect. Brinkman v. Hunter, 73 Mo. 172; Fadley v. Smith, 23 Mo. App. 88; Staub v. Eddy, 47 Mo. App. 189; Rinard v. Railroad, 164 Mo. 270; Light & Heat Co. v. Dowd, 47 Mo. App. 439; Seiter v. Bischoff, 63 Mo. App. 157; Nelson v. Brodhack, 44 Mo. 596; Bankson v. Railroad, 196 Fed. 171. (2) On the facts pleaded in the second count of the amended petition and proven in evidence and especially on and as a result of the correspondence between plaintiff and defendant's agent and branch office in New Mexico, during the latter part of 1905 and the early part of 1906, defendant is estopped from claiming against the assignee, plaintiff, that there was any default in the payment of any premium at the time

of the insured's death. Acton v. Dooley, 74 Mo. 63; Cornwall v. Ganser, 85 Mo. App. 678, 679; Sav. Ass'n v. Kehlor, 7 Mo. App. 158; Rice v. Bunce, 49 Mo. 231; Bank v. Frame, 112 Mo. 502; Moore v. Bank, 52 Mo. 377; Melton v. Smith, 65 Mo. 315; Ellerbe v. Bank, 109 Mo. 445; Anderson v. Baumgartner, 27 Mo. 80; Arnold v. Ins. Co., 60 S. E. (Ga.) 470; Insurance Co. v. Smith, 44 Ohio St. 156; Insurance Co. v. Allen, 212 Ill. 134; Newton v. Life Ass'n, 116 Iowa, 311; De Frece v. Ins. Co., 136 N. Y. 144; Carter v. Ins. Co., 110 N. Y. 15. (3) Appellant having received, retained and appropriated the proceeds and avails of its agent Dooley's collections from plaintiff, and having approved the previous assignment to plaintiff sent to defendant through its branch office and agent, Dooley, thereby ratified and became bound by said Dooley's acts. Defendant cannot ratify that part of Dooley's acts which are beneficial to it, and at the same time disaffirm and repudiate that part of the same series of acts which are not beneficial to defendant. Cline v. Woodmen, 111 Mo. App. 601; James v. Mutual Res. Ass'n, 148 Mo. 2; Porter v. Woods, 138 Mo. 539. (4) Appellant cannot claim that there was default in the payment of the premiums at the time of St. Vrain's death, because of the admitted want of notice by defendant to plaintiff as assignee of the time the premium represented by the blue note would become due, as required by the New York statute. Baxter v. Ins. Co., 119 N. Y. 450; Stokes v. Amerman, 121 N. Y. 343; Fisher v. Ins. Co., 167 N. Y. 183; Insurance Co. v. Orlopp, 61 S. W. (Tex.) 336; Ins. Co. v. English, 67 S. W. (Tex.) 884; Ins. Co. v. Berwald, 72 S. W. (Tex.) 436; Ins. Co. v. Hallum, 73 S. W. (Tex.) 554; Rowe v. Ins. Co., 38 N. Y. Supp. 621; Carter v. Ins. Co., 110 N. Y. 15; Phelan v. Ins. Co., 113 N. Y. 147; McDougall v. Society, 135 N. Y. 551; Strauss v. Ins. Co., 70 N. Y. Supp. 1149, 170 N. Y. 349; Barnes v. Insurance Co., 45 N. H. 21; Strauss v. Ins. Co., 67 N. Y. Supp. 509.

(5) The law of the contract of insurance sued on and the laws of New York in regard to requirement of notice, could not be and were not changed or repealed, or in anywise affected or modified, by either the blue note or the loan contract, or by any other contract either in the policy or in any other contract between the insurance company and the St. Vrains, or the plaintiff. Those laws could not be set out by contract. Smith v. Ins. Co., 173 Mo. 329; Society v. Clements, 140 U. S. 226; Hicks v. Ins. Co., 60 Fed. 690, 9 C. C. A. 215; Phinney v. Ins. Co., 67 Fed. 493; Life Ass'n v. Nixon, 81 Fed. 796, 26 C. C. A. 620; Life Ass'n v. Trimble, 83 Fed. 85, 27 C. C. A. 404; Harrington v. Ins. Co., 58 Pac. (Cal.) 180; Griffith v. Ins. Co., 36 Pac. (Cal.) 113; Burridge v. Ins. Co., 211 Mo. 158; Head v. Ins. Co., 241 Mo. 403.

WILLIAMS, C.—This is an action upon a life insurance policy. Trial was had in the circuit court of Henry county, Missouri, before the court, without a jury, resulting in a judgment for plaintiff, on the second count of his petition, for $5067.43, from which judgment (on the theory that certain constitutional questions are involved) defendant perfected its appeal to this court.

**Insurance Contract.**

The facts disclosed by the evidence are substantially as follows: .

Plaintiff is the assignee of the insurance policy. On November 24, 1891, defendant issued a twenty-payment tontine policy for $5000 upon the life of one Paul D. St. Vrain. The policy was delivered and first premium paid in the Territory of New Mexico, where the insured was then living. The policy provided for the payment of an annual premium of $135 on the 24th day of November of each year. Two years later, by separate contract agreement between the insured and the insurance company, the premiums were made payable semiannually, in November and May

of each year.  In 1893 the insured duly assigned the
policy to his wife, and thereafter, in the same year,
Mrs. St. Vrain applied for and procured from the
company a loan in the sum of $810, delivering and
pledging the said policy and its accumulations as se-
curity for the loan.  This loan was never repaid; and
the trial court in giving judgment deducted the amount
of the loan from the amount which the court found due
on the policy.  The interest on the loan was paid
each year until the insured's death.  The insured paid
all premiums on said policy for the fourteen years
from its issue up to but not including November 24,
1905.  On this latter date there was due the company,
as interest on the loan, the sum of $40.75, and also
the semiannual payment of $70.30, both falling due at
the same time.  The policy itself provided thirty days'
grace for the payment of the premium on November
25, 1905.  The insured resided at Clinton, Henry coun-
ty, Missouri, and Otto Lange, who afterwards became
the assignee of said policy, and is plaintiff in this ac-
tion, then resided at Watrous, New Mexico.  On said
date the insured, in order to pay the interest
of $40.75 due on the policy loan, drew a draft on said
Lange payable to the order of one J. F. Dooley, agent
of the defendant company, at Albuquerque, New Mex-
ico.  This draft the plaintiff paid when it was pre-
sented.  The evidence discloses that the insured had
at different times borrowed from Lange various sums
of money, totaling about $1000.  Some of this bor-
rowed money had been used by the insured in paying
parts of the premiums on said policy.  Lange had been
in correspondence with Dooley, defendant's agent,
from October 20, 1905, concerning the loan value and
different features of the policy and the advisability
of taking an assignment of the policy and carrying
it until matured.  When Lange paid the draft for
$40.75 which was used to pay the interest he did not
know that the semiannual premium, which was due

November 25, 1905, had not been paid. With reference to that premium, the defendant company made an arrangement with the insured, St. Vrain, and his wife, the then assignee, whereby they were to pay the sum of $18.30 in cash and execute an instrument called a "blue note," providing for the payment of the balance of said premium, to-wit, fifty-two dollars, on or before February 24, 1906. Said blue note, in words and figures, was as follows:

Pol. No. 431209.          78873.          Nov. 24, 1905.

On or before Feb. 24, 1906, after date, without grace, and without demand or notice, I promise to pay to the order of the New York Life Insurance Company, fifty-two and no-100 dollars at First National Bank, Albuquerque, N. M., value received, with interest at the rate of five per cent per annum. This note is accepted by said company at the request of the maker, together with eighteen and 30-100 dollars in cash, on the following express agreement: That although no part of the premium due on the 24th day of November, 1905, under Policy No. 431209, issued by said company on the life of Paul D. St. Vrain has been paid, the insurance thereunder shall be continued in force until midnight of the due date of said note; that if this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said company as payment of said premium, and all rights under said policy shall thereupon be the same as if said premium had been paid when due; that if this note is not paid on or before the day it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said company shall retain said cash as part compensation for the rights and privileges hereby granted, and all rights under said policy shall be the same as if said cash had not been paid nor this agreement made; that said company has duly given every notice required by its rules or by the laws of any State in respect to said premium, and in further compensation for the rights and privileges hereby granted the maker hereof has agreed to waive, and does hereby waive every other notice in respect to said premium or this note, it being well understood by said maker that said company would not have accepted this agreement if any notice of any kind were required as a condition to the full enforcement of all its terms.

(Name)  PAUL D. ST. VRAIN,
                    (Address)  Clinton, Mo.
(Name)  ELIZA J. ST. VRAIN,
                    (Address)  Clinton, Mo.

$52.00
   65c
1771.  Jan., 1905.

On December 23, 1905, plaintiff Lange received the following letter from defendant's agent:

New York Life Insurance Co., New Mexico Branch Office.

Albuquerque, N. M., December 23, 1905.

Otto Lange,

Watrous, N. M.

Dear Sir:

In reply to your favor of the 21st inst. will say that the $40.75 draft which Mr. P. D. St. Vrain drew on you only carries policy loan interest on the policy, and in order to make arrangement to take care of the policy it will be necessary that $18.40 more be paid. The premium was due on November 24th, and the thirty days grace allowed by the policy expires on the 24th of this month. On receipt of this letter, if you will take care of this matter, won't you kindly send me check for this amount, as if same is not mailed by you by Tuesday the 26th, the policy will have to be lapsed, and will make some difficulty in getting it reinstated again. If you don't send draft, please wire me to that effect.                    Very truly yours,

J. F. Dooley, Cashier.

In response to said letter Lange immediately sent to defendant's agent, at Albuquerque, the sum of $18.40, and, later, received the following letter:

Albuquerque, N. M., December 27, 1905.

Otto Lange,

Watrous, N. M.

Dear Sir:

I have your favor of the 23rd inst., enclosing remittance $18.40, to apply on premium due November 24th on policy 431209, St. Vrain. I want to thank you for your attention to same.

Very truly yours,

J. F. Dooley, Cashier.

In the meantime Lange had completed arrangements to have the policy assigned to him, and on January 6, 1906, he forwarded to defendant's said agent, in New Mexico, the assignment of said policy executed by the insured and his wife. The assignment was dated December 23, 1905. Dooley, defendant's agent, suggested that Lange and the insured have a settlement among themselves and agree upon the

amount which the insured owed Lange, so that the exact indebtedness, including the total amount of the future premiums, could be stated in the assignment contract, and the latter show upon its face the exact interest that Lange had in the policy. On January 27, 1906, agent Dooley received a letter from the insured to forward the assignment to the home office of the defendant company for record, "without any specification whatever, making it a clean transfer." The assignment reached the home office of the company on January 31, 1906. Later Lange received from the company the following letter:

New York, New York, February 6th, 1906.

Mr. Otto Lange,
    Watrous, New Mexico.
Dear Sir:

Re-policy 431209, St. Vrain.

Referring to assignment of above policy to you, dated December 23, 1905, we call your attention to the fact that the policy was pledged to and deposited with this company on January 21, 1903, as collateral security for a loan of $810 subject to the terms of the company's loan agreement.

Yours truly,
JOHN McCALL, Secretary.
Per EARNEST FREDERICK LOWES, Superintendent.

On March 2, 1906, Lange wrote to agent Dooley, requesting Dooley to let him know at any time when premiums or payments became due on the policy, so that he could take care of them, and received the following letter in reply:

Albuquerque, N. M., March 3, 1906.

Otto Lange,
    Watrous, N. M.
Dear Sir:

I have your favor of the 2nd inst. In reply, I have to state that the note for $52, interest 65 cts., making a total of $52.65, was due on Mr. St. Vrain's policy on February 24th, and on account of the nonpayment of same we have been compelled to report the policy lapsed. We have advised Mr. St. Vrain of this matter, and have asked him to send in health certificate required for reinstatement, and same should be returned to this office within the next day or two. In the meantime, if you are taking care of the premium, kindly send in remittance for the above amount, and if

Mr. St. Vrain furnishes satisfactory evidence of good health the policy will probably be reinstated without any other requirements. Kindly let me hear from you by return mail regarding this matter.

Very truly yours,

J. F. DOOLEY, Cashier.

This letter, so far as the evidence shows, conveyed to Lange his first information that the premium due November 25, 1905, had not been paid or taken care of, and also the first knowledge that had come to him of the fact that the note for fifty-two dollars, called the "blue note," had been given. Upon receiving said letter, Lange immediately sent to agent Dooley a check for the sum of $52.65, which check was cashed by Dooley, and held by him under the terms of a written receipt as follows:

New York Life Insurance Company,
346 and 348 Broadway, New York.

Receipt for deposit with application for restoration of policy.

Received at Albuquerque, State of New Mexico, this 6th day of March, 1906, from Otto Lange, the sum of fifty-two and 65-100 dollars, which is to be held pending the consideration by the New York Life Insurance Company, at its office of issue, of an application for the restoration of Policy No. 431,209 on the life of Paul D. St. Vrain, which policy, by the nonpayment of premium due Nov. 24, 1905, is not in force except as provided by the nonforfeiture features of said policy.

If said application for restoration is approved, said policy will thereupon be restored as of the date of such nonpayment and said cash will be retained by the company for application in accordance with the agreement of the parties.

Notice of said approval will be mailed to said Otto Lange at Watrous in the State of New Mexico. If no such notice is mailed within thirty days from this date, said application for restoration must be considered declined, and said sum will be returned on demand with surrender of this receipt.

This form of receipt is valid only when signed by a cashier of a branch office of the company, and assented to by the person depositing the money, and must be signed in duplicate, one copy to be delivered to the person depositing the money and the other retained by the company.

New Mexico Branch Office,
By J. F. DOOLEY, Cashier.

Terms of above receipt assented to.

OTTO LANGE, Assignee.

254 Mo. 32

On April 6, 1906, the defendant company, at its home office, received from St. Vrain, the insured, an application for reinstatement of the policy, and on April 18, 1906, the insured died. On April 23, 1906, agent Dooley wrote Lange as follows:

Albuquerque, N. M., April 23, 1906.

Otto Lange,
    Watrous, N. M.
Dear Sir:

    I am enclosing herewith check to your order $52.65, refund on the amount paid March 6, 1906, on Policy 431209 on the life of Paul D. St. Vrain. The insured has been unable to furnish the company with satisfactory evidence of good health. For this reason they have arranged to make this refund. Kindly return to me the receipt which you hold in your possession, and if you are unable to find it, please sign the attached receipt and return to me. Please give this matter prompt attention, and oblige.

Very truly yours,
JNO. F. DOOLEY, Cashier.

The defendant's evidence showed that the application for reinstatement of the policy was rejected at defendant's home office on April 12, 1906. The policy upon which suit is brought contained the following provision:

"Notice that each and every payment of premium is due at the date named in the policy is given and accepted by the delivery and acceptance of this policy, and any further notice required by any statute is hereby expressly waived. The giving of any other notice or the acceptance of any premium after it is due is to be considered as an act of courtesy only, and shall not be deemed as establishing a custom or as waiving or disturbing any of the conditions as to payment of premiums thereafter due."

The policy also contained this provision:

"That the contract contained in such policy and in this application shall be construed according to the law of the State of New York, the place of said con-

tract being agreed to be the home office of said company in the city of New York.''

The following statute was in effect in the State of New York when the policy was issued:

''Sec. 1.   No life insurance company doing business in the State of New York shall have power to declare forfeited or lapsed, any policy hereafter issued or renewed, by reason of nonpayment of any annual premium or interest, or any portion thereof, except as hereinafter provided.   Whenever any premium or interest due upon such policy shall remain unpaid when due, a written or printed notice stating the amount of such premium or interest due on such policy, the place where such premium or interest should be paid, and the person to whom the same is payable, shall be duly addressed and mailed to the person whose life is assured, or the assignee of the policy, if notice of the assignment has been given to the company, at his or her last known post office address, postage prepaid by the company, or by an agent of such company or person appointed by it to collect such premium.   Such notice shall further state that unless the said premium or interest then due shall be paid to the company or to a duly appointed agent or other person authorized to collect such premium, within thirty days after the mailing of such notice, the said policy and all payments thereon will become forfeited and void.   In case the payment demanded by such notice shall be made within the thirty days limited therein, the same shall be taken to be in full compliance with the requirements of the policy in respect to the payment of said premium or interest, anything therein contained to the contrary notwithstanding; but no such policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice.   Provided, however, that a notice stating when the premium will fall due, and if not paid the policy and all payments thereon

will become forfeited and void, served in the manner hereinbefore provided, at least thirty and not more than sixty days prior to the day when the premium is payable, shall have the same effect as the service of the notice hereinbefore provided for.''

Plaintiff's petition is in three counts. The first two counts sought a recovery of the full face value of the policy, less the policy loan, and the third count seeks to recover fourteen-twentieths of the face value thereof, after deducting the amount of the policy loan.

The pleadings are quite lengthy, covering about forty pages of the printed abstract, but the only point raised upon appeal that requires a more detailed statement of the pleadings has to do with the action of the court in overruling defendant's motion to require plaintiff to elect upon which count of the petition he would stand. Such parts of the pleadings as may be necessary to an understanding of the point raised will, in discussing the point, be stated in the opinion.

Defendant admitted in its answer that it was liable to plaintiff for the sum of $867, being the alleged paid-up policy value after the failure to pay the "blue note," and made tender of that amount.

The trial court found for plaintiff upon the second count of the petition. That count proceeds on the theory that the policy was in full force and effect upon the day the insured died; alleges that the defendant had failed to notify the plaintiff of its intention to forfeit said policy, as required by the New York law; and further, that by reason of the facts disclosed by the letters above set forth, and the acts and silence of defendant and its agents, the plaintiff was not informed as to the unpaid portion of the November premium, but was misled thereby into believing that all past premiums had been paid or taken care of, and that by reason thereof defendant was estopped from saying that said policy had lapsed for nonpayment of said note, due February 24, 1906.

The petition pleads the New York statute above copied. The trial court, at plaintiff's request, gave declarations of law Nos. 1 and 2 as follows:

"1. The court declares and finds with respect to the second count in plaintiff's second amended petition herein, that the plaintiff is the assignee of the policy sued on; that he became such assignee long prior to the maturity of the note in evidence called the 'blue note;' that during the time he was negotiating with the St. Vrains with reference to the assignment of the policy he paid defendant $40.75 through its agent, Dooley, in charge of defendant's branch office in New Mexico, as and for the interest on the loan of the insured St. Vrain and wife of $810, made by the defendant to them; that upon its receipt by said Dooley, the said Dooley informed plaintiff by letter that the sum of $18.40, in addition to said $40.75, was required in order to keep the policy sued on alive and in force, and that thereupon plaintiff remitted to said agent, Dooley, said $18.40; that thereupon said agent acknowledged receipt of said $18.40, and that it was not made known by said Dooley or defendant to plaintiff that any additional sum or sums was or would become due as premium on said policy until the coming due of the semiannual premium falling due in May, 1906; that plaintiff did not know of the fact of the giving of the note in evidence for the sum of fifty-two dollars, by the insured St. Vrain to defendant, or of the existence of that note, and that plaintiff had no knowledge or information of the same until after the maturity thereof and until March, 1906. That by reason of the premises and by reason of the silence and neglect of the defendant and of said Dooley to inform plaintiff of the existence of said note prior to the maturity thereof, plaintiff was misled into the belief that there was no premium due and unpaid.

"And the court finds as a conclusion of the foregoing facts, that defendant was and is estopped from

claiming as against the plaintiff any default in the payment of premiums on the policy sued on, prior to the death of the insured, St. Vrain, in April, 1906, and that therefore the plaintiff is entitled to recover the total amount of the policy sued on, amounting to the sum of $5000, with interest from July 6, 1906, at six per cent, less the sum of $810, the amount of said loan, together with costs of this action.''

''2.  The court declares that, respecting said second count of the last amended petition, there is no evidence proving or tending to prove that the defendant gave the plaintiff any notice whatever, through the mail, or otherwise, that the annual premium amounting to the sum of fifty-two dollars, evidenced by the note read in evidence, which fell due in February, 1906, was given or would become due, or that any portion of the premium which fell due November, 1905, remained due and unpaid; and the court finds that no notice was given to plaintiff that if said premium note for fifty-two dollars was not paid at its maturity the policy sued on and all payments thereon would become forfeited and void.  And the court declares that in consequence of the failure to give said notice, the payment of premiums on said policy was not in default at the time of the death of the insured, St. Vrain, and therefore the plaintiff has the right to recover the full amount of the policy for $5000, with interest, less the debt of $810.''

On September 21, 1910, respondent filed a motion in this court to transfer the case to the Kansas City Court of Appeals, but said motion was by Court in Banc, on November 12, 1910, overruled.  It will therefore be unnecessary to refer to the jurisdictional question in the opinion.

The points urged by appellant for reversal of the judgment are:  (1) That under the terms of the policy defendant company was not required to give notice of intended forfeiture, as required by the New York

statute above quoted; (2) that the acts and. conduct of defendant and its agent were not such as to estop defendant from claiming a forfeiture or lapse of the policy; (3) that the court erred in not compelling plaintiff to elect upon which count of the petition he would proceed.

## OPINION.

I.   The application for the policy was made and the policy delivered in the Territory of New Mexico. Such being the fact, it is too well settled to need citation of authority that the contract of insurance was a New Mexico contract.   If, then, the New York statute requiring forfeiture notice is to control in construing the contract, it must be by virtue of the terms of the contract of insurance, and not because the policy is a New York contract.   This distinction is material. Had the policy been executed in the State of New York, the statute quoted in the above statement would control whether or not referred to in the policy contract and even though the policy contract said that it would not control; this for the reason that persons contracting within a State are not permitted to contract away or annul the public policy statutes thereof.   On the other hand, if not in contravention of the laws and public policy of the place of contract, the contracting parties may stipulate to the effect that the laws, or a portion of the laws, of a foreign State shall control in construing the contract.   And when such is the case, it then becomes necessary to look to the contract which the parties themselves have made in order to see what law of the foreign State shall control in the construction of the contract and be considered as a part thereof.   Such is the present situation.   The policy is a New Mexico contract.   By one of its terms it provides that the. policy shall be construed as though it were

*Lex Loci: Provision for Foreign Law.*

executed in the State of New York. By another of
its terms it expressly waives the giving of any notice
required by any statute. The first provision, if not
restricted by other terms of the policy, is sufficiently
general to embrace all the New York law with ref-
erence to such contracts of insurance. The second pro-
vision is specific, and conflicts with the general stip-
ulation in that it waives the notice of forfeiture which
one of the New York statutes on the subject of in-
surance requires. One of the general rules of inter-
pretation of contracts is that stipulations
Specific
Clause. with reference to a definite and specific mat-
ter will control over a general clause. In the
case of Mutual Life Insurance Co. v. Hill, 193 U. S.
551, a similar state of facts was involved. In that
case the policy was delivered in the State of Washing-
ton, and contained a general clause to the effect that
the policy should be construed "to have been made
in the city of New York," and a specific clause to the
effect that notice required by any statute was waived.
It was held that the specific provision, waiving notice,
controlled. Mr. Justice BREWER, speaking for the
court, said:

"The contention is that this express stipulation
in reference to notice is nullified by the general pro-
vision that the contract is to be construed to have
been made in the city of New York. It is urged
that the laws of New York control in the construction
of any contract made in that State, that they require
notice as a condition of forfeiture and forbid a waiver
of such notice, and therefore that the agreement in
the policy in respect to notice is overthrown by the
law of the State. But that assumes that the contract
was made in New York, whereas it was in fact made in
Washington, and the laws of New York are controlling
in any respect only because the parties have so stip-
ulated, and, as we have indicated, the stipulation in
respect thereto is to be harmonized with the other

stipulations in the contract.  The ordinary rule in respect to the construction of contracts is this: that where there are two clauses in any respect conflicting, that which is specially directed to a particular matter controls in respect thereto over one which is general in its terms, although within its general terms the particular may be included.  Because when the parties express themselves in reference to a particular matter the attention is directed to that, and it must be assumed that it expresses their intent, whereas a reference to some general matter, within which the particular may be included, does not necessarily indicate that the parties had the particular matter in thought.  Here, when the parties stipulate that no other notice shall be required, attention is directed to the particular matter of notice.  When the stipulation is that the contract shall be construed to have been made in New York, no particular statute is referred to, and the attention may not be directed to the matter of notice or any other special feature of New York law.  The special controlled the general; that which must have been in the minds of the contracting parties controls that which may not have been, although included within the language of the latter stipulation.  This is the general rule in the construction of all documents—contracts as well as statutes. [Bock v. Perkins, 139 U. S. 628, and cases cited; Rodgers v. United States, 185 U. S. 83, and cases cited; Winebrenner v. Forney, 189 U. S. 148; Sedgwick on the Construction of Statutes and Constitutional Law (2 Ed.), p. 360, and note; 2 Parsons on Contracts (6 Ed.), p. 501, and note.]''

The rule announced in the above case is sound, and the conclusion follows that under the terms of the present policy defendant was not required to give the notice required by the said New York statute.  Nor is this situation relieved or affected by the so-called ''blue note,'' for the same does not undertake to

change the terms of the policy with reference to waiver of notice, but contains an express provision reiterating the waiver of any such notice.

The determination of the above point in appellant's favor, however, is not determinative of the case, for if it should be held that the trial court was justified in finding for plaintiff on the ground of estoppel, the judgment would still have a sufficient foundation upon which to stand.

II.   After careful consideration, we have reached the conclusion that the judgment below is justified on

Estoppel
in Pais.

the ground of estoppel.  From October 20, 1905, to January 27, 1906, plaintiff was in correspondence with defendant's agent, Dooley, about the value of said policy and matters pertaining to the assignment of the policy to plaintiff. The assignment was dated December 23, 1905, and delivered to defendant's agent January 6, 1906, and by him forwarded to defendant's home office January 31, 1906, and approved.   Dooley was the agent or cashier in charge of defendant's branch office for the Territory of New Mexico, located at Albuquerque.  Both the semi-annual premium of approximately seventy dollars and the interest of about forty dollars fell due on November 25, 1905, with provision for thirty days' grace. The insured lived in Missouri.  Plaintiff Lange lived in New Mexico.  The insured drew a draft upon Lange, payable to defendant, for the amount of the interest on the loan.  This draft, when presented, was paid by Lange.  On December 23, 1905, within the period of the thirty days' grace, Dooley, defendant's cashier, wrote to Lange the letter copied in the above statement.  By that letter Lange was told that, "in order to make arrangements to *take care* of the policy it will be necessary that $18.40 *more* be paid.  The premium was due on November 24, and the thirty days' grace allowed by the policy expires on the 24th of Decem-

ber," and further that "if you will *take care of this matter,* won't you kindly send me check for this amount," etc. Lange immediately sent to defendant his check for the sum called for in the letter, and received a reply acknowledging receipt of same to "apply on the premium due Nov. 24th." What knowledge did Lange have at that time? From the correspondence he had learned that the semiannual premiums were due on the policy on November 24th and May 24th of each year. Knowing this, he had the right to assume that when the November premium was paid or taken care of, nothing further toward payment of premium would have to be done till May, 1906. Was he justified in assuming that the November premium had been taken care of? We think he was. The letter from defendant's cashier in charge of defendant's branch office stated in effect that the November, 1905, premium on the policy would be taken care of if "$18.40 *more* be paid." Defendant and its cashier, Dooley, were fully aware that the company had made an arrangement with the insured—the arrangement called the blue note—which, when carefully read, will be seen to have had the effect of extending days of grace for the payment of a part of the November premium.. In other words, the blue note, in effect, operated only to change the date or extend the time of payment of a part of the November premium to February 24, 1906, without days of grace. of all of which Lange had no knowledge, but in fact had been furnished with information which would tend to lead him to the contrary belief, and which he says did lead him to believe that the November premium had been paid or taken care of. Furthermore, when the defendant received the assignment of the policy from the St. Vrains to Lange, at its home office, its general secretary, on February 6, 1906, wrote to Lange, referring to the assignment, calling his attention specifically to the fact that the policy was subject to the loan agree-

ment for $810, but making no mention whatever of the "blue note," which, if allowed to operate without plaintiff's knowledge, was more fatal to the policy's life than the loan agreement. This letter, calling attention to a lien on the policy created by an outside agreement, while remaining silent as to the "blue note," would also naturally lead Lange to believe that there were no other outside documents affecting the policy or changing its terms. Appellant contends that other letters in evidence were sufficient to have called Lange's attention to the fact that the November premium had not been paid in full, or fully taken care of. We have carefully read all the correspondence, and are unable to agree with the learned counsel for appellant. We find no letter which would have been sufficient to correct the misleading information which the above-mentioned letters contained.

Dooley was the agent and cashier in charge of defendant's branch office for the Territory of New Mexico. He had authority to collect premiums and take such documents as the blue note, as is clearly disclosed by the evidence. Having that power, he also, as a corollary, apparently had the power to give out information concerning the value of policies and the amount of premiums due thereon. The information he gave plaintiff was given while acting within the apparent scope of his authority, and if the information he thus gave caused plaintiff to be misled, the defendant company, and not the plaintiff, should suffer thereby. Neither should the receipt given by the defendant to the plaintiff, concerning the holding of the $52.65 pending the re-establishment of the policy, preclude plaintiff's recovery. It is true that the receipt is signed also by plaintiff, but his testimony clearly shows that it was not signed by him voluntarily, or with a full understanding of the situation. Even at that time he had not been fully informed as to the exact nature of the so-called blue note. Appellant's

counsel, discussing in their brief the question of estoppel, cite no authority in support of the contention that the evidence does not disclose sufficient grounds of estoppel; but they say, "We utterly fail to comprehend how it can be seriously contended that the correspondence between Dooley and the plaintiff, Lange, which was introduced in evidence, is open to even a suspicion of any *wilful* or *intentional* concealment from Lange that St. Vrain had given a 'blue note' agreement to carry his insurance."

We do not understand the rule to be that the concealment or misleading must be wilful or intentional in order to create an estoppel. The correct rule in that regard was stated by Judge WAGNER in the early case of Rice v. Bunce, 49 Mo. l. c. 234, as follows:

"The important and primary ground of estoppel by matter *in pais* is that it would be fraud in a party to assert what his previous conduct had denied when on the faith of that denial others have acted. . . . The element of fraud, though said to be essential, may exist in either of two ways: First, in the intention of the party estopped; or second, in the effect of the evidence which he attempts to set up."

To the same effect is Spence v. Renfro, 179 Mo. l. c. 421. So, in the case at bar we may concede that neither cashier Dooley nor the defendant wilfully or intentionally concealed the true state of facts from the plaintiff, yet it nevertheless follows that said conduct on their part did mislead plaintiff; and while they were not bound to give him notice of forfeiture as required by the New York statute, yet, when they spoke concerning the policy and premium, it was their duty to speak fully thereon, and to supply such facts as were necessary to make clear the part information so given; and to permit defendant now to disclose facts in its defense which it failed to disclose to plaintiff when it was its duty so to do, would in effect defraud plaintiff of his rights.

The finding of the trial court as to estoppel was manifestly just and is amply supported by the evidence, and to find otherwise would be to look with favor and friendly welcome upon forfeitures rather than with disfavor, as the law requires.

III.' Appellant next contends that the first and second counts of the petition are inconsistent with the third count thereof, and that the court erred in overruling its motion to require plaintiff to elect upon which count of the petition he would proceed.

**Pleading: Election.**

The first count is based on the theory that the November premium was not paid, and that the net reserve value of said policy "at the time of the failure to pay said semiannual premium on said policy, due November 24, 1905," was sufficient to have purchased temporary insurance to the face amount of the policy for a period beyond the date of the insured's death, and that therefore the defendant was liable for the full amount of the policy, less said loan. The second count proceeds on the theory that the premium due November 24, 1905, was not paid, but that by reason of the acts and letters of defendant and its agents, defendant is "estopped from setting up and claiming that the policy lapsed for nonpayment of said note due February 24, 1906," and further, that defendant failed to notify plaintiff as required by the New York statute in such cases, and that by reason of such estoppel and failure of notice, the defendant was liable for the full amount of the policy, less said loan. The third count proceeds on the theory that "if it be true that said policy lapsed for nonpayment of the premium due November 24, 1905, then the plaintiff was entitled," etc., to recover an amount "equal to as many twentieth parts of the face of the policy as there shall have been complete annual premiums paid," which plaintiff alleges would be fourteen-twentieths of the face value of the policy.

Each of said counts pleads execution of the policy, and each recognizes the nonpayment of the November, 1905, premium.   While it is true that some of the facts necessary to prove the allegations of one count are not required to prove the allegations of either of the other counts, yet it cannot be said that the facts necessary to prove any one of said counts disproves or positively contradicts the state of facts necessary to support either of the other counts.   When that is true, the counts are not inconsistent, and therefore not within the rule requiring an election.   [Drolshagen v. Railroad, 186 Mo. 258; Rinard v. Railroad, 164 Mo. 270.]   The correct rule applicable here was ably stated by Judge HOUGH in Brinkman v. Hunter, 73 Mo. 1. c. 178, as follows:

"It is well settled in this State that the provision of the code requiring the plaintiff to set forth in his petition 'a plain and concise statement of the facts constituting a cause of action, without unnecessary repetition,' does not prohibit the statement of a single cause of action in different counts, for the purpose of so varying the form of the statement as to meet any possible state of the proof (citing cases).   So where two distinct and different claims are based upon the same instrument, although the plaintiff may be entitled only to a single satisfaction, both may be stated in different counts.   [Byrdseye v. Smith, 32 Barb. 217; Bliss on Code Plead., par. 120.]   In neither case can the court compel the plaintiff to elect upon which count he will proceed."

It follows that the court acted without error in overruling defendant's motion to elect.   The judgment is affirmed.   *Roy, C.,* concurs.

PER CURIAM.—The above opinion by WILLIAMS, C., is adopted as the opinion of the court.   All the judges concur.