**BUDER et al. v. DENVER NAT. BANK.**

No. 13047.

Circuit Court of Appeals, Eighth Circuit.

Oct. 8, 1945.

Rehearing Denied Nov. 14, 1945.

Langdon R. Jones, of Kennett, Mo., for appellant Oscar E. Buder.

Taylor Sandison, of St. Louis, Mo., for appellants Gustavus A. Buder and another.

Thomas S. McPheeters, of St. Louis, Mo. (Bryan, Cave, McPheeters & McRoberts, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER and THOMAS, Circuit Judges, and MILLER, District Judge.

GARDNER, Circuit Judge.

This is an appeal by Gustavus A. Buder and Oscar E. Buder individually and as copartners doing business under the firm name and style of Buder & Buder, from a judgment awarding appellee possession as pledgee of 3,500 shares of the common capital stock of Burroughs Adding Machine Company out of the remainder interest in 28,250 shares of such stock bequeathed to G. A. Franz under the will of his deceased father, Ehrhardt D. Franz, and decreeing that Oscar E. Buder and the partnership of Buder & Buder are estopped to assert that appellee's right to possession of said 3,500 shares is inferior or in any way subsequent or subordinate to their respective rights to possession of said stock, and also decreeing that appellee is entitled to hold said stock as collateral security for an indebtedness due it from G. A. Franz, deceased, in the principal amount of $32,749.-87, with interest, in accordance with the terms of the notes evidencing such indebtedness and the agreements therein contained, and to apply or dispose of the same in accordance with such terms. The parties will be referred to as they were designated in the trial court.

The action resulting in this judgment was brought by the plaintiff bank to establish and enforce an equitable lien as against Oscar E. Buder and the firm of Buder & Buder in the 3,500 shares of stock of the Burroughs Adding Machine Company. It was the claim of plaintiff in the trial court, and it so contends here, that its lien on said stock is superior in equity to the liens claimed by the defendants because by their

conduct they have been estopped as against plaintiff to assert any claim to this stock until after plaintiff's claim has been fully satisfied. This claim is based upon the contention that defendants by their conduct induced plaintiff to accept an order on the trustees of the Franz estate for the delivery to it of 3,500 shares of this stock as collateral to its loans, by the representation or assurance that such 3,500 shares were available and that its loans would be protected by such order, and that relying upon such assurance plaintiff postponed the foreclosure of liens upon similar stock which it already held as collateral, at a time when such foreclosure would have fully liquidated its loans.

An understanding of the issues makes it necessary to give some genealogy of the property involved.

Ehrhardt D. Franz died in 1898, leaving a will which provided for a life estate in his widow, Sophie Franz, with remainder over to his ten children, to be divided among them in equal shares. In 1909 Sophie Franz executed a trust instrument by which she conveyed to one of her sons, G. A. Franz, and Gustavus A. Buder, as trustees, the property received by her from her deceased husband. This instrument specifically provided that the trustees should employ the law firm of Buder & Buder as their counsel, and that firm has in fact continuously represented the trustees. The instrument also provided that Oscar E. Buder should become successor trustee in the event of any vacancy. Among the assets devised by Ehrhardt D. Franz were 210 shares of stock of the American Arithmometer Company, which was exchanged for Burroughs Adding Machine stock, which in turn was "split" as a result of stock dividends, and at the time of the death of Sophie Franz in 1930, there were in the hands of the trustees as trust property 282,500 shares of Burroughs Adding Machine Company stock, of which G. A. Franz, one of the ten children, was entitled to receive 28,250 shares. The named trustees continued to hold this stock, and proceedings for its distribution were pending in the United States District Court of St. Louis, Mo., throughout the period involved in the present controversy.

G. A. Franz was engaged in the development of mining properties in Colorado and became a borrower from the plaintiff bank. Shortly prior to April 10, 1939, his indebtedness to the bank had reached a total of $67,000, represented by several notes secured by the pledge as collateral of 5,333 shares of Burroughs Adding Machine Company stock. On that date the market price of this stock had materially fallen, and even prior to that date the bank had become greatly disturbed as to the sufficiency of the collateral security of the Franz loan and Franz was being importuned to furnish additional security. On March 26, 1939, Franz wrote the bank, explaining that because of his illness he would not be able to get back to St. Louis to get the 3,500 shares of Burroughs stock to be distributed to him; that he had had a wire from his attorney (Oscar E. Buder), advising that the litigation which had been holding up distribution of the estate had been decided and that there was no reason why the entire estate could not be distributed as soon as he got back there; that if the market continued to drop he would have his St. Louis attorney send the bank additional collateral. On April 3, 1939, he again wrote the bank, saying that he was not strong enough to leave immediately for St. Louis but that if the market did not show strength he would phone St. Louis and have his attorney send the bank additional collateral. Just prior to April 10, 1939, Franz talked with Oscar E. Buder, his attorney, over the telephone, and as a result of that conversation on April 10, 1939, Oscar E. Buder wrote the plaintiff bank as follows: "There is to be a partial distribution of the Franz Trust as soon as the mechanics thereof can be arranged wherein Mr. G. A. Franz will have clear 3500 shares of stock of the Burroughs Adding Machine Company, which he has directed me to notify his co-trustee is to be delivered to me to be sent to you as additional collateral for his loan. I feel safe in assuring you that his loan is protected by the above direction."

This letter Oscar E. Buder showed to his brother and law partner, Gustavus A. Buder, a few days after it had been written. Gustavus A. Buder did not take the witness stand. The bank, relying on this letter of April 10, 1939, refrained from exercising its right to sell out the Franz collateral then held by it, but on the contrary made him a new loan. Shortly prior to May 19, 1939, Franz, at the request of the bank, executed an order on the trustees to deliver 3,500 shares of stock to Oscar E. Buder, to be forwarded to the bank. This order was duly received by Oscar E. Buder

who endorsed thereon, "The above instructions acknowledged by me," and returned the duplicate copy to the bank.

At the time Oscar E. Buder wrote his letters of April 10, 1939, and June 6, 1939, to the bank, and at the time he acknowledged the order dated April 10, 1939, directing the trustees to deliver 3,500 shares of the Burroughs stock to Oscar E. Buder for delivery to the bank, G. A. Franz had assigned 26,750 shares out of the 28,250 shares which he was entitled to receive, as collateral security. He had sold and assigned 1,000 shares of this stock to H. C. Becker, and 1,500 shares of the stock had been impounded by order of the United States District Court prior to 1939 as security for the payment of attorney fees chargeable against said stock. These assignments of stock to secure obligations of Franz are as follows:

| Name | Date | Principal | No. Pledged | Due 4/10/39 |
|---|---|---|---|---|
| Buder & Buder | 12/31/33 | $ 35,116.64 | 2,250 | $ 45,772.82 |
| Buder & Buder | 12/31/33 | 21,483.91 | 1,250 | 27,923.28 |
| Buder & Buder | 12/31/33 | 27,513.46 | 1,500 | 35,319.83 |
| Buder & Buder | 12/31/33 | 14,544.58 | 1,000 | 18,683.10 |
| Buder & Buder | 12/31/33 | 26,296.35 | 1,500 | 34,412.28 |
| Buder & Buder | 7/11/31 | 25,000.00 | 2,500 | 36,250.00 |
| Buder & Buder | 7/11/31 | 10,000.00 | 1,000 | 14,255.00 |
| Buder & Buder | 4/10/31 | 30,000.00 | 3,000 | 44,430.00 |
| Oscar E. Buder | 3/16/31 | 30,000.00 | 3,000 | 44,400.00 |
| E. A. Buder | 10/21/31 | 5,000.00 | 1,000 | 5,525.00 |
| A. W. Wenger, Trustee | 12/15/30 | 30,000.00 | 3,000 | 43,220.00 |
| Pontiac Realty Co. | 2/ 1/31 | 30,000.00 | 3,000 | 46,775.00 |
| G. A. Buder | 12/31/33 | 16,105.00 | 1,500 | 21,178.07 |
| A. U. Simmons | 8/24/38 | 10,000.00 | 1,250 | 10,000.00 |
| Total | | $311,059.74 | 26,750 | $428,144.38 |

Adding to the 26,750 shares pledged, the 1,000 shares sold to H. C. Becker and the 1,500 shares impounded for litigation expenses, make a total of 29,250 shares, or 1,000 shares more than he was entitled to. Oscar E. Buder had knowledge of all these assignments, with the possible exception of the assignment to A. U. Simmons representing 1,250 shares, and he knew that if a total distribution should be made only 28,250 shares would be available for distribution to Franz, of which 28,000 shares had already been pledged.

G. A. Franz died July 30, 1939. He had pledged to plaintiff 5,333 shares of Burroughs Adding Machine Company stock other than that here involved, which plaintiff sold in October, 1940, for $8 per share, and after applying the proceeds of sale to the debt of Franz, there was a balance due the plaintiff of $32,749.87 as of October 20, 1940. All the claims set out in the foregoing table have been filed and allowed against the estate of G. A. Franz. The assets of that estate, out of which these claims must be paid, if at all, consist of G. A. Franz' distributive share of the Burroughs Adding Machine Company stock, amounting to 28,250 shares. This stock is insufficient in value to pay all the claims.

Defendants have filed separate briefs. The defendant Oscar E. Buder in effect contends that: (1) His letters of April 10, 1939, and June 6, 1939, respectively, do not constitute a factual statement that Franz would have 3,500 shares of stock; (2) the statements contained in the letters were not relied upon by plaintiff to its prejudice; (3) plaintiff was guilty of negligence in not investigating and ascertaining the true facts and that plaintiff had no right to rely upon the statement contained in these letters; (4) Oscar E. Buder was not subject to imputed notice of the contents of the brief filed on September 1, 1939, which he did not prepare, and hence could not be subject to imputed notice of the assignments.

The defendant Gustavus A. Buder and Buder & Buder, in their separate brief, adopt all the contentions of the other brief and in addition in substance contend that: (1) The law partnership was not bound by the letters of Oscar E. Buder as they were not within the scope of a law business; (2) Gustavus A. Buder is not estopped by silence; (3) correspondence between plain-

tiff and G. A. Franz was erroneously admitted in evidence.

It must be borne in mind that this is not an action in fraud and deceit to recover damages but an action based upon equitable estoppel or estoppel in pais. The distinction in the two classes of actions is pointed out by this court in an opinion by the late Judge Hook in Kimber v. Young, 8 Cir., 137 F. 744, and again referred to by us in Roosevelt v. Missouri State Life Ins. Co., 8 Cir., 78 F.2d 752. As said by the Supreme Court of Missouri in State ex inf. Shartel v. Missouri Utilities Co., 53 S.W.2d 394, 399, quoting from De Lashmutt v. Teetor, Mo.Sup., 169 S.W. 34, "Equitable estoppel, or estoppel in pais, is that condition in which justice forbids that one speak the truth in his own behalf."

It is the principle which forbids one who knows or should know the truth, from denying or asserting the contrary of any material fact which by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another who is excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon, changing his position so that he would suffer injury if such denial or contrary assertion were allowed. State ex rel. v. Missouri Utilities Co., supra; Biggs v. Modern Woodmen of America, Mo.Sup., 82 S.W.2d 898; Johnson v. Ferguson, Mo. Sup., 44 S.W.2d 650; State ex rel. v. Haid, Mo.Sup., 41 S.W.2d 806. The doctrine of equitable estoppel may be invoked to prevent fraud, actual or constructive, and should be applied so as to promote the ends of justice and accomplish that which ought to be done in equity and good conscience. Its essential elements are: (1) Conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts or which is calculated to convey the impression that the facts are otherwise than those which the party subsequently attempts to assert; (2) an expectation on his part that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. In the instant case, plaintiff relies upon the representations made in the letters of April 10, 1939 and June 6, 1939. As to these defendant Oscar E. Buder contends that they do not state facts concerning G. A. Franz' 3,500 shares of stock.

The letter of April 10, 1939, contains, we think, statements of fact. It relates to a state of things. It states that there is to be a partial distribution "as soon as the mechanics thereof can be arranged," and that G. A. Franz "will have clear 3,500 shares of stock of the Burroughs Adding Machine Company." It closes with the words, "I feel safe in assuring you that his loan is protected by the above direction." An expression of opinion alone can not be the foundation of an equitable estoppel by representation. This letter clearly states as a fact that 3,500 shares of this stock belonged to G. A. Franz and that only mechanical details had to be attended to before he would reduce them to possession. In Taylor v. Commissioner of Internal Revenue, 7 Cir., 89 F.2d 465, 467, it is said: "The facts concerning the character of the possession of these bonds were known to the petitioners. They were not known to the Commissioner. The representations and assurances of taxpayers thereon were representations of facts, not representations of law."

As Oscar E. Buder well knew, what the bank was interested in was, not when the distribution of this stock would be made, but that Franz was entitled to 3,500 shares of this stock clear. Whether these shares were to be available at once was not of the utmost importance. As a matter of fact, it was not the court nor the litigation of questions that prevented G. A. Franz from making good his pledge of 3,500 shares, but the fact of the prior hypothecation of this stock. This certainly had nothing to do with the mechanics or procedure in obtaining a decree of distribution, but it went to the fact that Franz had nothing to assign nor to have the decree operate upon in a substantial manner. The prior hypothecation of this stock was a fact well known to the writer of the letter, and that fact was inconsistent with the statements contained in the letter.

Oscar E. Buder attempts to vindicate his statement that Franz owned 3,500 shares of stock clear, despite the fact that 28,250 shares were at that time beyond his control by reason of prior assignments, by saying that when he wrote the letter of April 10 he did not know that G. A. Franz had assigned to his brother, Gustavus A. Buder, individually 1,500 shares, and he did not know that G. A. Franz had assigned to A. U. Simmons 1,250 shares. He also

testified that G. A. Franz had a written agreement with A. W. Wenger, trustee, to accept from him 2,000 shares of stock for the debt of $30,000 and interest, thereby releasing an additional 1,000 shares. Incidentally, this agreement was not put in evidence, and the trial court was, we think, justified in disregarding it. It is noted too that the Wenger claim was allowed in the G. A. Franz probate at $45,095.03 on April 29, 1940. As already observed the claim was secured by 3,000 shares of Burroughs stock, which on the market about April 10, 1939, was worth approximately 11¼ a share, or a value at that time of a little over $30,000. In April, 1939, the claim with accrued interest amounted to $43,-220. Yet Buder testified that he felt sure that Franz would get 1,000 shares out of the Wenger collateral. If so, Wenger would receive stock worth slightly over $20,000 in payment of his $43,000 claim. Such an agreement, if made, of course, would be without consideration. Wenger was acting as trustee and the explanation offered is so contrary to human probability as to warrant the court in disbelieving it. These so-called explanations went to the possibility of changing the status or condition of the property, not to its actual condition at the time he made the representations. The court found that:

"On all the dates and at all the times aforesaid, Oscar E. Buder had full knowledge of the fact that G. A. Franz had, previous to the time of the making of the representations aforesaid, formally assigned 28,000 shares of a total of 28,250 which were distributable to him. Of this 28,000 which he know had been assigned, 1,500 had been assigned to the Clerk of the District Court at St. Louis to secure the payment of attorneys' fees which were paid and the stock released. Oscar E. Buder knew that it was impossible for 3,500 shares of stock or any amount thereof to be subject to assignment for delivery to the plaintiff free of encumbrances as a result of any possible order of partial distribution of the Court in which the distribution was pending. And at the time the representations aforesaid were made by Oscar E. Buder, they were false, were known by him to be completely false and were made with the intent to deceive the plaintiff bank and to induce the bank to extend further credit to G. A. Franz and to induce the bank to forbear the enforcement of the collection of its existing loan to Franz and to improve the position of defendant Oscar E. Buder, G. A. Buder, and the partnership Buder & Buder as creditors of G. A. Franz."

The finding, we think, is abundantly sustained by substantial evidence. The court also found that the bank relied upon the representations made and because of them it forbore the enforcement of the collection of its existing loans to Franz until such time as it was impossible for it to realize the amount of Franz' indebtedness from the collateral security which it held; that the bank knew that Oscar E. Buder was the personal attorney of Franz and that he was handling the legal matters connected with the stock and its distribution; that after the receipt of the order executed May 19, 1939, but dated April 10, 1939, it endorsed on its notes the following notation, "Accepted assignment of 3500 shares of Burroughs Adding Machine Company." The court found that the placing of this notice on the notes "was in accordance with and pursuant to the understanding plaintiff had with Franz and Oscar E. Buder, (1) that the assignment of 3500 shares of Burroughs stock had been agreed to by Franz; (2) that the availability of the stock unencumbered for assignment to plaintiff had been vouched for by Oscar E. Buder; and (3) that the extension of the credit to Franz after April 10, 1939, was predicated upon and because of these assurances and the promised ultimate delivery of that stock to plaintiff free and clear of encumbrances to be held by plaintiff as collateral security for its loan to Franz."

■■ It was impossible under the proven facts for G. A. Franz to assign the 3,500 shares, or any part of them, as additional security to plaintiff's loan. Oscar E. Buder can not shield himself by claiming that he was ignorant of the error of his representations. He was not only attorney for Franz but he was attorney for the trustees who had control of this stock. He was appealed to for the information as one who possessed it and who could impart it. He so spoke, was so understood, and expected to be so understood. Under these conditions knowledge was imputed to him. Pomeroy's Equity Jurisprudence, 5th Ed., § 809; Spence v. Renfro, 179 Mo. 417, 78 S.W. 597; Lange v. New York Life Ins. Co., 254 Mo. 488, 162 S.W. 589; Fulton v. Kansas City Life Ins. Co., Mo.App., 148 S. W.2d 581. The conclusion of the trial court that an equitable estoppel and all essential elements thereof had been proven

by clear and convincing evidence in so far as Oscar E. Buder is concerned was clearly warranted if indeed not compelled by the evidence.

It remains to consider the liability of Buder & Buder, law partnership composed of Gustavus A. Buder and Oscar E. Buder. As has already been observed, Gustavus A. Buder and Oscar E. Buder, composing the law firm of Buder & Buder, were attorneys for Franz and they were the attorneys for the trustees of the Franz trust estate, and Gustavus A. Buder was one of the trustees. As a firm they held assignments of some 14,000 shares of this stock. The court found that Gustavus A. Buder had actual knowledge that Franz was indebted to the plaintiff in a large sum of money and that he proposed to use the stock which was to be distributed to him in the impending partial distribution for the purpose of furnishing further collateral to secure that indebtedness; that the firm of Buder & Buder were representing not only the trustees but Franz personally; that Oscar E. Buder was acting as the representative of the partnership as well as in his individual capacity as attorney for Franz; that Oscar E. Buder had represented to plaintiff that there would be as much as 3,500 shares of this stock distributed to Franz and that this stock was free and clear of encumbrances for delivery to plaintiff to secure Franz' indebtedness to it; that Oscar E. Buder had assured plaintiff that he would notify the trustees to deliver the 3,500 shares, and that these representations were false and that he could not and would not as trustee deliver any of this stock free and clear of encumbrances; that notwithstanding this knowledge he did not, either as cotrustee or as a member of the partnership of Buder & Buder, advise plaintiff of the true facts concerning this stock until long after it could have realized the full amount of Franz' indebtedness to it from the security it then held.

As has heretofore been noted, Gustavus A. Buder had actual knowledge of the Oscar E. Buder letter of April 10, 1939. With the other facts and circumstances which he knew, he must have known that a fraud was being perpetrated in the course of the firm business. As Buder & Buder were counsel for the trustees, representing them in all proceedings with reference to the distribution of the trust property, it was their duty to act for the trustees in procuring distribution of the property to the parties entitled thereto. The trustees had received notice of the various assignments of the Franz stock, and it must be borne in mind that Gustavus A. Buder was himself a trustee, directly concerned in the matter of properly distributing this stock. He was an assignee to the extent of 1,500 shares, in addition to the 14,000 shares assigned to the law firm, and in addition to this the Pontiac Realty Company, of which Gustavus A. Buder was president, was the assignee of 3,000 shares, and he had knowledge that 1,500 shares had been impounded to cover claims for attorney fees. He had actual knowledge that Franz was indebted to the trustees to the extent of some $27,000, and that some 4,500 shares of Franz' stock were held to cover that indebtedness. With actual knowledge of all these facts, and with actual knowledge that the statements made by his partner in the letter of April 10, 1939, were false and that fraud was being perpetrated upon the bank, he remained silent. But it is urged that the partnership of Buder & Buder is a law partnership only and therefore a noncommercial and nontrading partnership, and hence, it is said that knowledge of Oscar E. Buder can not be imputed to Gustavus A. Buder. Knowledge of one partner in relation to the business of a firm is imputed to the other partner regardless of the nature of the partnership. The test is whether the partner was acting within the scope of the partnership business. When Oscar E. Buder made the representations to the bank with reference to the stock, he was transacting "law business" as defined by Section 13313, Revised Statutes Missouri 1939, Mo.R.S.A. The argument that the letters written by him to the plaintiff bank were mere voluntary acts performed without compensation is unsound. He was acting for his clients Franz and for his clients the trustees of the Franz trust, and was presumably compensated for his services.

The Supreme Court of Pennsylvania in Thompson v. Christie, 138 Pa. 230, 20 A. 934, 935, 11 L.R.A. 236, had before it a contest between the holders of an unrecorded oil lease and the holders of a subsequent lease taken and recorded before the defendants went into possession and began operations on the land. McClelland, the owner of the property, made a lease to Jones and others. Plaintiff Thompson claimed under a lease subsequently made but recorded prior to the first lease. There

was evidence offered that the owner "went to the law-office of J. M. Thompson and W. C. Thompson, who were law-partners, and father and son, for advice in regard to the best manner to proceed in order to terminate the lease to Jones and others; that J. M. Thompson advised, as the cheapest and most expeditious method, the making of a new lease, and putting it upon record so as to secure priority over the unrecorded lease to Jones; that he suggested his son and law-partner as the person to whom the new lease should be made; that the lease was accordingly drawn by him and executed by McClelland for the express purpose of being used to defeat the title of the holders of the Jones lease." Referring to this proffered evidence the court said: "W. C. Thompson cannot profit by a lease obtained for him by his law-partner without being affected by notice of the facts brought to the attention of his partner during the negotiation, and which formed the inducement to the lease."

In the Pennsylvania case plaintiff had no actual notice. In the instant case the firm of Buder & Buder is seeking to profit by defeating the claim of the bank to 3,500 shares of this stock. We are of the view that Gustavus A. Buder is chargeable with the knowledge of the acts of his law partner in regard to the matter which directly concerned the duty of the law firm as counsel for the trustees and as counsel for Franz. They were not only lawyers but they were pledgees. They were creditors and one of them was a trustee. The finding of the court on this issue is, we think, sustained by the evidence and is presumptively correct. F. W. Fitch Co. v. Camille, Inc., 8 Cir., 106 F.2d 635; Storley v. Armour & Co., 8 Cir., 107 F.2d 499.

That plaintiff could have realized the full amount of Franz' indebtedness to it from the security it held at the time it received assurances that the additional 3,500 shares would be turned over to it as additional security to the Franz indebtedness, is apparent from the record which shows that in the month of May the stock, which is a listed stock, was as high as $13\frac{7}{8}$; that in June the stock was as high as $13\frac{5}{8}$, and that in July it was as high as $14\frac{1}{2}$. After plaintiff ascertained that these 3,500 shares of stock were not available it then foreclosed at a loss of $32,749.87. This is the measure of plaintiff's prejudice caused by the delay to foreclose its collateral because it relied upon the representations made by the defendants. This was a consequence naturally resulting and actually flowing from defendants' wrongful acts.

We have considered all other contentions of the defendants but find them wholly without merit. The judgment appealed from is therefore affirmed.