De Lashmutt v. Teetor.

**Damages:**
**Excessive**
**Verdict.**

---

## JOHN S. DE LASHMUTT et al., Appellants, v. G. O. TEETOR et al.

**Division One, July 14, 1914.**

1. **REAL ESTATE: Law of Situs: Trustee Substituted by Foreign Court.** A resident of the State of Maryland devised lands in Missouri to trustees for sale and conversion. On the surviving trustee's *ex parte* application to a court of Maryland he was relieved and another citizen of that State was appointed to and assumed the trust. This last trustee, who was also sole administrator of the testator's estate c. t. a., deeded the lands to one under whom defendants claim. *Held,* that the trustee's deed was ineffectual to transfer the title, only the courts of the *situs* having jurisdiction to deal directly with real property.

2. **CONVERSION: For Purposes of Distribution: Failure of Trust on Final Distribution.** In 1878 a testator in Maryland devised land in Missouri to A, B, and C, three of his executors,

in trust that they or their survivors should sell it in whole or in part, at public or private sale, upon such terms and at such time as they might deem most advantageous for the estate, and pay the proceeds to the executors to be distributed according to the provisions of the will. One-sixth of his estate the testator gave in trust for a daughter during her life, to be conveyed to the daughter's children at her death. The sole surviving trustee was relieved by a Maryland court in 1887, the Missouri land being still unsold, and a trustee was appointed whose attempted conveyance to defendant's grantor failed to pass the title. *Held*, that the power of the trustees appointed by the will was limited to conversion for distribution according to the provisions of the will; and that upon final distribution of the estate, their power over lands still unsold ceased, and the legal title to one-sixth thereof vested in the trustee for the testator's daughter, and after the death of the daughter became vested in her children.

3. **ESTOPPEL: Trustee for Life Tenant: Cannot Bind Remaindermen.** A trustee for a life tenant has no more power to bind the remaindermen or their title than the life tenant would have had had there been no trust. Such trustee could not dispose of the remainder by estoppel, or by the ratification of a void deed, any more than she could do it by her own deed.

4. ————: ————: ————: **Receiving Proceeds of Invalid Sale: Knowledge.** Remaindermen entitled to a fee in certain property discharged from a trust under the will of their grandfather, are not estopped to object to an invalid sale of the land by a substituted trustee because they accepted a partial distribution of the estate, made up in part of the proceeds of such sale, they having had no knowledge of the sale when they received the distribution.

Appeal from St. Clair Circuit Court.—*Hon. C. A. Denton*, Judge.

REVERSED AND REMANDED (*with directions*).

*J. C. Hargus, George H. Daniel* and *W. E. Owen* for appellants.

(1) While it is held that a testator may authorize his executor or trustee to sell land in a foreign jurisdiction, and that such power may be exercised

without administration in the foreign jurisdiction, yet in such cases the donee of the power acts by the express authority of the will and without the aid of legal process. It is in fact a contractual or vested right in the donee, but even in such case it is uniformly held that the will must be proved and recorded in the State where the land lies, in conformity to its law, before the power can be exercised. 13 Am. & Eng. Ency. Law (2 Ed.), p. 944; Hines v. Hines, 143 Mo. 494; Keith v. Keith, 97 Mo. 224; Gaven v. Allen, 100 Mo. 300; Cabbanne v. Skinker, 56 Mo. 367; Fenderson v. Mo. Tie Co., 104 Mo. App. 293. (2) The appointment of Aubrey Pearre as succeeding trustee by the circuit court of Maryland was utterly void as to the Missouri lands, and for several reasons. (3) It is our contention that the power of sale of the St. Clair county land, given in the will of John Sifford, was a personal trust in the named trustees, and could alone be exercised, if at all, by them or the survivor of them as provided in the will; and that as John E. Sifford resigned and refused to sell the land, it passed to Mrs. DeLashmutt for life, with remainder in fee simple to her heirs. The rule is well settled in England and this country, that where an estate is devised to trustees for a particular purpose, the legal estate vests in them so long as the execution of the trust requires it and no longer. Strong v. Rice, 27 Pa. St. 75; Ross v. Parker, 1 Bran. and Cress. 360; Mark v. Mark, 9 Watts, 410; Stark v. Kirchgrober, 186 Mo. 642; Pills v. Sheriff, 108 Mo. 116; Roberts v. Massley, 51 Mo. 282; Carr v. Dings, 54 Mo. 95; Ferguson v. Stephens, 5 Mo. 211. (4) Treating the will of John Sifford as creating a trust in John E. Sifford, and with absolute direction to sell all of the land and pay the proceeds to the executor for distribution; yet the title of John E. Sifford ceased and determined upon his voluntary resignation, its acceptance by the court of Maryland

and his continued acquiescence in the mandate of said decree. The title was divested out of him, both by the decree of the Maryland court and by the force and effect of section 141, R. S. 1909, hereinbefore discussed. The legal title passed to the heirs and devisees of John Sifford, according to the other provisions and intention of the testator as expressed in his will. Compton v. McMahan, 19 Mo. App. 502; Greenough v. Welles, 10 Cush. 571; Sugden on Powers, 394. (5) The Statute of Limitations could not run against Mrs. De Lashmutt, because she was a married woman, nor against plaintiffs as remaindermen, until the termination of their mother's life estate. Manning v. Coal Co., 181 Mo. 359; Hall v. French, 165 Mo. 441; Shumate v. Snyder, 140 Mo. 77; Carr v. Dings, 54 Mo. 95; Dyer v. Brannock, 66 Mo. 391; Graham v. Ketchum, 192 Mo. 25. (6) In this case there can be no estoppel against plaintiffs, growing out of the sale of the land by Aubrey Pearre, as several of the essential elements of estoppel are absent under the facts as disclosed. To constitute an estoppel the following requisites must exist: (a) There must be conduct, acts, language or silence amounting to a misrepresentation or concealment of material facts. (b) These facts must be known to plaintiff at the time of their conduct, or the circumstances such as necessarily to impute knowledge. (c) The truth must be unknown to defendants at the time when such conduct was done, and at the time it was acted upon by them. (d) The conduct must be done with the intention or expectation that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be acted upon. (e) The conduct must be relied and acted upon by the defendant. (f) They must have, in fact, acted upon such conduct in such manner as to change their position for the worse and suffer loss. Pomeroy's Eq. Jur. (3 Ed.), sec. 805; Bishop on Contracts, sec. 300; Burk v. Adams, 80 Mo.

504; Bales v. Perry, 51 Mo. 449; Goltermann v. Schiermeyer, 125 Mo. 298; Dameron v. Jameson, 143 Mo. 538; Blodgett v. Perry, 97 Mo. 273. (7) Nor can it be contended that the plaintiffs ever ratified or acquiesced in the sale of the property by Aubrey Pearre. If the party originally possessing remedial rights has obtained full knowledge of the material facts involved in the transaction, has become fully aware of its imperfections and of his right to impeach it, or ought and might with reasonable diligence have become so aware, and he acts deliberately and with the intention of ratifying the voidable transaction, then his confirmation is binding. But if the party wrongfully supposes that the original contract or transaction is binding, or if he has not full knowledge of all of the material facts and of his own rights, no act of confirmation however formal is effectual; the voidable nature of the transaction is unaltered. 2 Pomeroy's Eq. Jur. (3 Ed.), secs. 964, 965, 817 and 818; St. Louis St. Bk. v. Kennett Estate, 101 Mo. App. 398; Purdy v. Bankers' Ass'n, 101 Mo. App. 109; Beland v. Brewing Assn., 157 Mo. 605; Patum v. Holiday's Adm., 59 Mo. 428. Neither estoppel nor acquiescence can bar plaintiffs' right to recover in these cases, for the evidence wholly fails to show that they had full knowledge of the sale of these tracts of land, and of their right to impeach such sale, and with this knowledge received and accepted their share of the purchase money. In fact the evidence does not show that plaintiffs had any knowledge whatever of the sales of these tracts of land prior to the receipt of money from the Sifford estate. (8) There was no actual conversion of the land into money under the will of John Sifford, and consequently nothing to prevent plaintiffs from recovering from defendants their interest in the land. Nall v. Nall, 243 Mo. 255; Gest v. Flock, 2 N. J. Eq. 115; 9 Cyc. 853; Compton v. McMahan, 19 Mo. App. 499.

*W. W. Lawton* and *Parks & Son* for respondents.

(1) Appellants had both actual knowledge as well as information of facts which if followed would have furnished to them actual knowledge that the moneys they received after their mother's death were in part the proceeds of the sale of the lands in controversy. Marlow v. Leter, 87 Mo. App. 584; Ins. Co. v. Smith, 117 Mo. 292; Drey v. Doyle, 99 Mo. 459; Roan v. Winn, 93 Mo. 503; Sensenderfer v. Kemp, 83 Mo. 588; Engeman v. Bank, 84 Mo. 408; Speck v. Riggin, 40 Mo. 405; Hall v. Tissier, 15 Mo. App. 306; Lee v. Turner, 15 Mo. App. 205. (2) When a sale of land is made, no person can be permitted to receive both the money and the land. It makes no difference whether the proceedings are voidable or wholly void in consequence of the want of jurisdiction. Where an election exists between inconsistent remedies, the party has a reasonable time within which to elect and is confined to the remedy he makes. Hector v. Mann, 225 Mo. 248; Proctor v. Nance, 220 Mo. 104; Railroad v. Bridge Co., 215 Mo. 286; Meddis v. Kennedy, 176 Mo. 200; Cadematon v. Granger, 160 Mo. 352; Fisher v. Siekmann, 125 Mo. 165; Ceyburn v. McLaughlin, 106 Mo. 521; Greeley v. Bank, 103 Mo. 212; McClanahan v. West, 100 Mo. 323; Boogher v. Frazier, 99 Mo. 325; Austin v. Looney, 63 Mo. 22. (3) An estoppel binding on an ancestor or trustee is binding on the heir or *cestui que trust*. Hubbard v. Slavens, 218 Mo. 598; 2 Herman on Estoppel, sec. 787; Thistle v. Buford, 50 Mo. 278. Where the owner of the land would be estopped by reason of his own acts and conduct from setting up title thereto, those in privity with him, unless purchasers for value without notice, labor under a similar disability. Thistle v. Buford, 50 Mo. 278. (4) The executor has the power to make any disposition of his estate he sees fit and the beneficiaries take it burdened with such con-

261Mo27

ditions as the testator sees fit to place upon it. Stevens v. DeLaVaul, 166 Mo. 20; Carter v. Bolster, 122 Mo. App. 142. (5) John Sifford's will vested in the trustees the absolute title to the Missouri land, not a mere power to sell. For this reason, the heirs at law and beneficiaries, took no title or interest in the land but only in the proceeds, after passing through the hands of executors. Compton v. McMahan, 19 Mo. App. 494; Marshall v. Meyers, 96 Mo. App. 643; 28 Am. & Eng. Law (2 Ed.), p. 864; 2 Underhill on Wills, sec. 782, p. 1115; 2 L. R. A. (N. S.) 173, note. (6) Even if the will of John Sifford gave only a mere power to sell and did not vest the absolute title in the trustees, yet the fee was divested by the power conferred and the heirs at law and beneficiaries have no interest in the real estate itself. Francisco v. Winfield, 161 Mo. 560; Williams v. Lobbans, 206 Mo. 399; Eneberg v. Carter, 98 Mo. 647. (7) The trusts created in John E. Sifford, trustee of the title to the Missouri land as well as that in Ann Josephine Sifford, trustee for Cleanthe Eugenia Delashmutt were active trusts; not dry or passive trusts. Simpson v. Erisner, 155 Mo. 157; Simpson v. Jennings, 163 Mo. 332; Schiffman v. Schmitt, 154 Mo. 204; Walton v. Drumtra, 152 Mo. 489; 1 Perry on Trusts (5 Ed.), sec. 18; 2 Perry on Trusts (5 Ed.), sec. 475; Underhill on Trusts and Trustees, pp. 13, 14. (8) Where a foreign court has jurisdiction of the subject-matter and persons, its judgment will bind the interest of the parties in lands in this State. McCune v. Goodwillie, 204 Mo. 306; Olney v. Eaton, 66 Mo. 563; Austin v. Loring, 63 Mo. 19; Proctor v. Proctor, 69 L. R. A. 685, note; State ex rel. v. Zachritz, 166 Mo. 313; Coney v. Laird, 163 Mo. 408; Real Estate Co. v. Laudell, 133 Mo. 395; Davis v. Wakelee, 156 U. S. 689; Newton v. Brownson, 67 Am. Dec. 89; Massie v. Watts, 6 Cranch, 148; Penn. v. Hayward, 14 Ohio, 302; Gardner v. Ogden, 78 Am. Dec. 192; Dale v. Roseveldt, 5 Johns. Ch. 174; Mitchell v.

Burch, 22 Am. Dec. 669; Bunsley v. Stevenson, 23 Ohio St. 474; 11 Am. & Eng. Ency. Law, 167-173; Brown v. Desmond, 100 Mass. 257; 2 Herman, Estoppel, sec. 214, p. 232; Noble v. Grandin, 84 N. W. 465; Kirkland v. Loan Assn., 60 S. W. 149. (9) Whenever the right of action in a trustee who is vested with the legal title is barred by limitation, the right of the *cestui que trust* is also barred whether the *cestui que trust* be *sui juris* or under disability during the period of limitation, or whether entitled in possession, or in remainder, it being also immaterial whether the remainder be vested or contingent. Chase v. Cartright, 53 Ark. 358, 22 Am. St. 207; Meeks v. Olpherts, 100 U. S. 564, 25 L. Ed. 735; Edwards v. Woolfolk, 17 B. Mon. 376; Herndon v. Pratt, 59 N. C. 327; Waring v. Railroad, 16 S. C. 416; Johnson v. Cook, 122 Ga. 524; Smilie v. Biffle, 2 Pa. St. 52, 44 Am. Dec. 156; Barden v. Stickney, 132 N. C. 416, 130 N. C. 62; Williamson v. Beardsley, 137 Fed. 467; Molton v. Henderson, 62 Ala. 426; Dennis v. Bluit, 122 Cal. 111, 68 Am. St. 17; Patchell v. Railroad, 100 Cal. 505; McLeran v. Benton, 73 Cal. 329, 2 Am. St. 814; Wilmerding v. Russ, 33 Conn. 67; Salter v. Salter, 80 Ga. 178, 12 Am. St. 249; Moore v. Armstrong, 10 Ohio, 11, 36 Am. Dec. 63; Long v. Cason, 4 Rich. Eq. 60; Woolridge v. Bank, 1 Sneed, 297; Williams v. Otey, 8 Humph. 563; Collins v. McCarty, 68 Tex. 150; McAdams v. McAdams, 10 Tex. Civ. App. 653; Digman v. Nelson, 26 Utah, 182; Jenkins v. Jensen, 24 Utah, 108; 2 Beach on Trust and Trustees, sec. 669; Wilson v. Trust Co., 44 S. W. (Ky.) 121. In this case the direct and controlling point in question was upon the correctness of the rule referred to by Perry on Trusts and quoted in Ewing v. Shanahan, 113 Mo. 191, and relied upon by plaintiff's counsel, viz.: "It would seem that the *cestui que trust* is entitled to an interest in remainder only, the statutory bar ought not to begin to run against him until his interest falls into a right to the possession of the beneficial or equitable interest."

The Supreme Court of the United States, without a dissenting opinion, speaking by Justice Miller, says this is not the true doctrine, and in passing upon the question state: ''Whatever doubt may have existed at one time on the subject, there remains none at the present day, that whenever the right of action in the trustees is barred by the Statute of Limitations, the right of the *cestui que trust* thus represented is also barred. This doctrine is laid down in Hill on Trustees, side paging 267, 403 and 504 and the authorities there cited fully sustain the text, both English and American.''

BROWN, C.—This suit was begun by filing the petition in the St. Clair County Circuit Court, October 3, 1907, and summons was taken at the same date. The plaintiffs are the surviving husband and three sons and one daughter of Cleanthe Eugenia DeLashmutt, deceased, a daughter of John Sifford, deceased, who is the common source of all title asserted by any party to the suit. The plaintiffs claim title to $\frac{19}{150}$ of a tract of land in said county, particularly described as the west half of the southeast quarter of section 7, township 37, range 28. The defendant Teetor claims title to the whole through a conveyance dated April 7, 1893, by one Aubrey Pearre, purporting to act as trustee for Mrs. DeLashmutt as well as administrator with the will annexed of the estate of John Sifford, to one D. L. Dade, for a consideration of $1000. The defendants Darrow and Henry are beneficiary and trustee in a deed of trust under the Dade title. The other defendants, of whom there are fifteen, are descendants of John Sifford, and would represent all the other interests in the land, if the theory upon which the plaintiffs are proceeding be the true one. They, however, are seeking no relief and do not answer. The theory of the plaintiffs is that the deed of Pearre to Dade is void

for want of power to convey in any of the capacities assumed by the maker.

The amended petition upon which the cause was tried was filed November 14, 1908, and is in two counts. The first count states the interest of the parties in connection with their relationship to John Sifford; that he died testate in Frederick county, Maryland, in 1878, seized of the land; that his will was duly admitted to probate by the orphans' court of Maryland for said county and established as such will by the formal decree of said court; that letters testamentary issued out of said court to his son `John Sifford and one John Loats, the only surviving executors named in said will, who thereupon duly qualified, and entered upon the discharge of the duties of said office. Loats soon died, and John E. Sifford became the only surviving executor. "That by said last will all the lands of said testator in St. Clair county, Missouri, were devised to John E. Sifford and two others and the successor or successors of them, in trust, with power to sell and convey all or any portion of said lands as might be considered in the discretion of said trustees for the best interest of said testator's estate, and further to pay over all of the proceeds of such sales to testator's executors to be divided amongst his devisees, including plaintiffs." That the other trustees died without having assumed to execute the powers vested in them by the will, and that John E. Sifford accepted said trust and entered upon the performance of his duties as such trustee.

That John E. Sifford in July, 1885, resigned as executor and refused to act further under said will in that capacity; and thereupon Aubrey Pearre (who had since the execution of the will intermarried with the testator's daughter Ann Josephine Sifford) was by the said orphans' court duly appointed administrator *de bonis non cum testamento annexo,* and qualified and entered upon his duties as such. In 1887 John E.

Sifford filed in the circuit court for Frederick county, Maryland, a court of general jurisdiction, sitting in equity, his petition to be relieved from the trust with reference to the St. Clair county lands, and for the appointment of Aubrey Pearre as his successor. This proceeding was *ex parte*. The court relieved Sifford of the trust and appointed Pearre, who, purporting to act in both capacities of executor and trustee, executed the deed to Dade already referred to. That the will was not filed for record in St. Clair county until February 24, 1904, and no ancillary or other administration on the Sifford estate was ever taken out in Missouri; that the only color of title held by Teetor is through the said deed to Dade, which is utterly null and void. The petition further states that under the will of John Sifford, his daughter Cleanthe E. DeLashmutt was getting a life estate in equity of an undivided one-sixth of all lands of the testator, which was devised to his daughter Josephine Sifford in trust for the said Cleanthe with directions to permit her to use and enjoy the same, and receive the rents, issues and income thereof during her life; that she died March 25, 1903, leaving surviving her her husband, the plaintiff Van E. DeLashmutt, to whom she was married prior to the death of her father, and the other plaintiffs, together with Frank T. DeLashmutt and Gertrude D. Jackson, her children and sole heirs. Frank T. DeLashmutt has since died and Gertrude Jackson has refused to assert any interest in the lands in suit and is made defendant. The petition then proceeds as follows:

"Plaintiffs further state that they each (except Van E. DeLashmutt) and including Frank E. DeLashmutt have received some money from the estate of John Sifford, deceased, paid to them by and through their said mother's trustee under the will of said John Sifford; and these plaintiffs say that according to their information and belief a portion of the money so re-

ceived was derived from the proceeds of the sale of the land in suit, but that these plaintiffs have no suf-ficient knowledge or information concerning same to state definitely what amount or proportion of the pro-ceeds of the sale of said land have been received by them or any of them.

"And these plaintiffs say that having no right to participate in the bequests and devises so made by John Sifford to Cleanthe E. DeLashmutt until after her death in 1903, that they had no knowledge or in-formation as to the manner and method in which the land in dispute had been disposed of, or whether dis-posed of at all, and did not know and were not advised that said land had been disposed of by said Aubrey Pearre in the illegal manner hereinbefore set out; and they were first advised of the facts aforesaid as to the manner and method of the sale of the said land in suit during the year 1905, and after a portion of the money held by Cleanthe E. DeLashmutt's trustee had been received and receipted for as hereinbefore re-cited.

"Plaintiffs further state that defendant G. O. Tee-tor, by mesne conveyances, derives his pretended title to said land from said D. L. Dade, and that said land is reasonably worth the sum of $2800, or an increase of $1800 over the consideration paid the said Aubrey Pearre by said D. L. Dade for said land; and there is now an existing deed of trust on all said land in favor of Hez H. Henry, beneficiary, and F. L. Darrow, as trustee therein, for the sum of $1600, placed on the land by the grantees of said D. L. Dade, and for this reason said Henry and said Darrow are made parties to this suit.

"Plaintiffs further state that the rights and equi-ties existing between them and the defendants herein cannot be determined or adjusted in a suit at law, and that they have no adequate remedy in a court of law, and that they hereby invoke the aid of the powers

of this court of equity to adjust the rights, interests and equities in and to said lands as between plaintiffs and defendants.

"Plaintiffs further aver that the fair and reasonable rental value is now, and has been since the pretended sale thereof by Aubrey Pearre to D. L. Dade, the sum of $1.50 per acre per year; and plaintiffs here now offer to do and perform toward defendants such equity as to the court may seem just and right under the facts which shall develop in this cause.

"Wherefore, plaintiffs pray the court by its judgment and decree to ascertain, determine and define as between plaintiffs and defendants the title to said land; and to ascertain, determine and define that plaintiffs are entitled to an undivided $\frac{19}{150}$ interest in fee in and to the land in this suit involved as against the defendant G. O. Teetor and that said interest be divested out of said Teetor and fully vested and perfected in these plaintiffs; and in order to prevent further litigation that this court of equity award to plaintiffs a writ of restitution and possession for their interest in said land as ascertained by this court; and plaintiffs pray for such other, further or different orders, judgments and decrees as to the court shall seem just, right and equitable in the premises as between them and defendant Teetor; and in this connection and in order that the court may do complete, full and ample justice between the parties litigant, plaintiffs ask that the court ascertain the amounts received, if any, by plaintiffs out of the purchase money paid by such Dade for said lands and the amount, if any, that should now be chargeable against plaintiffs and in favor of defendant Teetor, by reason of such sums and taxes paid by said Teetor or his grantees, and to charge said Teetor and his grantees with fair and reasonable rent as shall be just and right, and on stating such account to make such orders and decrees touching the settlement of same as shall be just and right. And

plaintiffs say that in the event that the court shall deem it inequitable and unjust to defendant Teetor to deprive him of any portion of said land, but that said Teetor should be permitted to retain all of said lands and account to plaintiffs for their interest and share therein, then these plaintiffs are willing to release and surrender to defendant Teetor all of their right, title and interest in said lands upon defendant fully accounting to them for the fair and reasonable value of said land increased or diminished by the accounting between them as found by the court, and plaintiffs are willing to receive such sum of money as to the court shall seem just and right under all of the facts in this cause.

"And as against defendants F. L. Darrow and Hez G. Henry, plaintiffs say that they are entitled to a decree, finding and determining that said deed of trust is not a lien upon or against plaintiffs' interest in said land, either in kind or in any sum adjudicated due plaintiffs, and that as against them and their interest in said land, said deed of trust and the debt evidenced thereby be ordered and decreed canceled and for naught held; and plaintiffs say that the value of said lands is so greatly in excess of the amount of said debt that the beneficiary under said deed of trust will not be endangered in the collection of his said debt; and that said defendants be divested of all and any apparent interest and title in and to said land as against these plaintiffs and their interest in said land."

The second count of the petition repeats or adopts the facts stated in the first count and prays "for a decree finding and determining their interest in said lands, finding and stating an account between plaintiffs and defendants, and decreeing partition of said lands, and appointing commissioners, and decreeing plaintiffs' interest in said land free from the lien of said deed of trust and that the same is valid only as

against the interest of said Teetor herein, and for such other orders, judgment and decrees in the premises as to the court shall seem right, just and equitable.''

The answer states substantially as it is stated in the petition the acceptance by John E. Sifford of the trust created in the will, together with his appointment and resignation as executor, and the appointment of Pearre as his successor, his application in 1887 to the circuit court for Frederick county, Maryland, a court of general equity jurisdiction, to resign as trustee, and his petition for the appointment of a successor; his refusal to act further; the acceptance of his resignation and appointment of Aubrey Pearre his successor as trustee; acceptance by Pearre of the appointment; and that the latter continued to act as such trustee until the St. Clair county lands were all sold, and turned over the proceeds to himself as administrator *de bonis non* of the estate. The answer then proceeds as follows:

''Defendant further states that the said Aubrey Pearre as said administrator of the will annexed of the estate of said John Sifford, received from said trustee the proceeds of the sale of said real estate, and in accordance with the provisions of said John Sifford's will, distributed the same among and to the beneficiaries under said will, including the plaintiffs to this action, and that said beneficiaries, including plaintiffs, with full knowledge of all the foregoing facts as above set forth, received and receipted for the same, and that by reason of the premises and said conduct of said beneficiaries as well as under said conveyance, this defendant is now the owner of said real estate, and plaintiffs are estopped thereby to assert title to said real estate.

''2. And further answering in this cause, defendant adopts without repeating the several allegations in the first count or paragraph of this answer, and avers that there is a defect of parties to this cause in

this: (a) that the lands in controversy were devised in trust to trustees named in the will of John Sifford, deceased, and plaintiffs aver that successor in trust has never been appointed, and if in that event the appointment of Aubrey Pearre is held to be void, then the original trustees named in the will, and in the event of their death, their heirs are necessary parties to this action; (b) that the trustee for Cleanthe E. De-Lashmutt during her lifetime and upon her death for the children of said Cleanthe, is not alleged to have ever conveyed to said children, and for that reason is a necessary party to this action.

"3. And further answering in this cause defendant adopts without repeating the several allegations in the first count or paragraph of this answer, and avers that plaintiffs' alleged cause of action did not accrue within ten years next before the filing of the original petition in this cause and is barred under the Statutes of Limitation in this State."

A copy of the will of John Sifford with the proof taken in the orphans' court for Frederick county, Maryland, and its order establishing the same and admitting it to probate, is filed with the answer. The devise to John E. Sifford and others as trustees is as follows:

"I give and devise to my son John E. Sifford and my sons-in-law John Loats and John I. Boyd, of the State of Maryland, all my lands, tenements and real estate situate in St. Clair county, Missouri, to them, their heirs and assigns upon the following trust:

"Nevertheless upon trusts that they, or the survivor, or survivors of them, shall sell said lands and real estate in whole or in parts, at public or private sale, and upon such terms, and at such times as they or the survivor, or the survivors of them, shall deem most advantageous to my estate, and upon the further trust and with full power and authority in them, or the survivors or survivor of them, to convey said lands

when sold to the purchasers or purchaser by a good and sufficient deed or deeds, and upon the further trust to pay over the proceeds of such sales to the executors hereinafter named and appointed by this, my will, or to the survivors or survivor of them, to be by my said executors, the survivors or survivor of them, distributed according to the provisions of this, my will, among the legatees therein mentioned.''

The will also contains the following clause:

''I give and bequeath to Ann Josephine Sifford, one other seventh part of my estate, in trust to invest the same, or such part as she may in her discretion think fit, in real estate within or without the State of Maryland, and to permit my daughter Cleanthe De-Lashmutt to occupy the said real estate and to take and receive to her own, sole, separate and exclusive use during her life, the issues, rents and profits thereof, and upon the further trust in case my said daughter shall not occupy my said real estate, either to sell the same, or to rent out the same, and if sold, to reinvest the same from time to time in other real estate and to pay over the rents, issues and profits thereof, to my said daughter Cleanthe for and during her life, and for her sole, separate and exclusive use and benefit. And upon the further trust to invest any portion of this bequest not invested in real estate in such securities, public or private, as she may deem best, vesting in said trustee full discretion as to said investments, with power to call in said investments and from time to time reinvest the same, and upon the further trust to pay my said daughter Cleanthe for and during her natural life the income from such investments for her own sole, separate and exclusive use free from the marital rights of her present or any future husband. And from and after the death of my said daughter Cleanthe, in trust, to convey to her children now born or hereafter to be born, the real estate held under the provisions of this clause of my will and to transfer and

hand over to such children the investments held under this clause of my will.'' His son John E. Sifford, his daughter Mrs. Loats and his sons-in-law John Loats and John I. Boyd were named as executors. By a codicil the share so disposed of became one-sixth instead of one-seventh.

Issue was taken by reply to the new matter in the answer.

Mrs. Cleanthe Eugenia DeLashmutt died March 25, 1903, at Shelburn, Sullivan county, Indiana, where she (with her husband and all the members of her family except her oldest child, Mrs. Jackson, who remained in Baltimore, and John S., who went to Ohio before 1888, and resided at different places in that State), had settled upon leaving Pennsylvania, and resided ever since. At the time the family moved to Indiana, the youngest child, Mrs. Mills, was about three years old, and the oldest, Mrs. Jackson, about thirteen. The plaintiff John S. was then about nine years old, and Oscar six years old. The estate of John Sifford had been fully administered and distributed and the final settlement of Pearre was approved and passed June 8, 1897. John E. Sifford died in 1904.

While Mr. Pearre testified that after his appointment as trustee by the Frederick Circuit Court in Maryland, and in 1888 or 1889, he made ''one or two'' visits to St. Clair county, Missouri, and stopped off at the DeLashmutt home in Shelburn, Indiana, and discussed with the whole family his sales and proposed sales of land in St. Clair county, the DeLashmutts all say that during the visit he did not talk about any sales he had made or was going to make, but did say that he was going to Missouri to recover some lands that had been sold or thrown away by John E. Sifford, administrator, and spoke about bringing suits for it. They also say, in substance, that the first information they had that any of the lands had been sold was about three months after their mother's death when they re-

ceived a quitclaim deed for their signature covering some of these lands which were said to have been sold to one E. S. Knowles. This was returned without signing.

On August 7, 1903, Mr. Pearre wrote John S. DeLashmutt the following letter about the estate left in Mrs. Pearre's hands at the death of Mrs. DeLashmutt:

"8/7 3.

"J. S. DeLashmutt,
   811 S. Sandusky Ave.,
     Bucyrus, O.

Dear Nephew:

"Yours of July 30th to hand. Your mother's estate consists of $5000 in bonds and the property in Shelburn, Ind. This property stands in the name of Aunt Nannie J. Pearre. Out of the property $500 is to be returned to the Loats Orphan Asylum, Frederick City, Md. Your sisters have $500 each in it. My understanding is that the Shelburn property belongs to your sister, after the Loats asylum gets its $500. If that is the case, the only other property is the 5 bonds of $1000 each to divide between the 5 heirs, or one bond to each heir. I will send you the bond, or sell it, and send you a ok. with statement of sale. You can send me a receipt in full for your interest in your mother's estate, or account just as you may view the status of the property in Shelburn. Make the receipt to Anna J. Pearre, nee Sifford, Trustee.

"Your aunt is absent until September. Also your sister, Mrs. Jackson, or I would confer with them.

Very truly yours,
     A. Pearre."

On April 26, 1904, he wrote the following:

"4/26/04.

"Mr. J. S. DeLashmutt,

811 S. Sandusky Ave.,

Bucyrus, O.

Dear Nephew:

"Referring to your favor of the 25th, would say the bond you would get is one issued by the city of Montgomery, Ala. It is a 5% bond, has only two or three years to run before maturity. It should bring 101 or $1,010:00/100. I have four of these bonds, and one of Va. Midlands, which is at a premium of $12%. Whoever takes this bond will have to pay this premium, or enough to equalize this bond down to the value of the others, and this excess premium will be divided with the other heirs. I will see that your interest is protected.

"I wrote you yesterday, enclosing a 'quitclaim Deed' from Mo. This land was sold some twenty years since, and the money paid to us for it—the letter will explain. When this paper arrives, please execute it with Mrs. DeLashmutt and return—you will place me under obligation. Hoping your health will improve rapidly under the operation to which you refer, and with kindest regards to family, I remain,

Very truly yours,

A. PEARRE."

Along with this quitclaim deed, which was the same sent them in the summer of 1903 from Osceola, was a check to each of them for $1019.20 and a receipt for same substantially like that signed by Frank T. DeLashmutt, which is follows:

"Baltimore, 5/13/04.

"Received of Mrs. Anna J. Pearre, Trustee, one thousand nineteen 20/100 dollars—first installment of my interest in the estate of my grandfather, Jno. Sifford, deceased—said interest having been held in trust

for the use of my mother, Cleanthe DeLashmutt, during her natural life.

$1,019-20/100            FRANK T. DeLashmutt.''

The checks were accepted, and the receipts were signed and returned to Mr. Pearre, but the quitclaim deed was held for investigation; all of which called forth the following letters from him:

"5/24/04.

"Mr. Frank T. DeLashmutt,
        Shelburn,
            Sullivan Co., Ind.
Dear Sir:
    "I have a letter from your brother, J. S. DeLashmutt, stating he is holding the 'Quit Deed' on request from Shelburn, as the parties there are looking into it.    And are also holding.    If my statement is not worth believing, or if you have to defend your interests from me, I don't care to continue my correspondence with you.

Very truly yours,
                    AUBERY PEARRE.''

"P. S.    You can continue your correspondence with J. B. Egger, Appleton City, Mo.''

"5/24/04.

"Mr. Jno. S. DeLashmutt,
Dear Nephew:
    "Your letter with receipt to hand.    Accept thanks for candor regarding the Quit Deed.    I have written Shelburn that if my word is worth nothing and they have to defend their interest from me, I don't care to communicate again with them, and have referred them for further correspondence to J. B. Egger, Appleton City, Mo.    I have been working for their interest for the past twenty years, without even my postage stamp paid.    Have thrown into your mother's estate $500 commission to which your aunt is entitled as trustee;

and I don't care now to be regarded as one from whom you are compelled to defend yourself.

> Very truly yours,
> Aubery Pearre."

All the living heirs of Mrs. DeLashmutt, excepting Mrs. Jackson, who did not testify, swore positively that they never ascertained until after the distribution in 1904, that any of the St. Clair county lands had been sold by Mr. Pearre, and that they did not know that any of the money which they received from Mrs. Pearre in that year was realized from the sale of any of those lands.

I.  Both parties, plaintiffs and defendants, claim the land in controversy under John Sifford, the common source of title. Both claim through

**Real Property: Law of Situs.** his will; the plaintiffs as remaindermen in fee after an equitable life estate in their mother, Cleanthe Eugenia DeLashmutt, and the defendants through a deed from Aubrey Pearre purporting to act in its execution both as executor of the estate of John Sifford, and as trustee under the will, to one D. L. Dade, under whom, by mesne conveyances, the defendant Teetor, the occupying claimant, deraigns his title. The defendant Teetor also says that the plaintiffs are barred by the Statute of Limitation by reason of the adverse possession of himself and those under whom he claims for more than ten years and that they are estopped from disputing his title by participation in the proceeds of the sale under which he claims. The force and effect of the Pearre deed is, therefore, the first question presented by the record.

II.  It is not to be conceived that any government would permit the title to the lands which constitute the foundation and define the territorial limits of its

sovereignty, to depend upon the operation of the laws of any foreign State or Nation. Real estate transfers of every description, whether by act of the parties or by operation of law, depend, for their validity and effect, upon the laws of the jurisdiction in which the property is situated. Suits affecting the status of lands are local to the situs of the property. As is said by WRIGHT, J., in Companhia de Mocambique v. British South Africa Company, [1892] 2 Q. B. 358, 366, "it is a general principle of jurisdiction that title to land is to be directly determined, not merely according to the laws of the country where the land is situate, but by the courts of that country, and this conclusion is in accordance with the rule ordinarily adopted by the jurisprudence of other countries. See Story's Conflict of Laws, secs. 551-5." In the citation quoted, Mr. Story says: "Real actions ought to be brought in the place *rei sitae;* and this is the rule, not only when the property in controversy is situate in the same kingdom, but also when the parties, being domiciled in one country engage in a litigation as to property locally situate in another country. If therefore a judgment should be rendered in one country respecting property in another, it will be of no force in the latter." The author then quotes from Vattel, who, in treating of controversies relating to estates in land, says: "In such a case, as property of this kind is to be held according to the laws of the country where it is situated, and as the right of granting it is vested in the ruler of the country, controversies relating to such property can only be decided in the State in which it depends." The existence of government requires that it be supreme in the control of persons and things within its territorial jurisdiction, and it is inconsistent with that supremacy that any other sovereignty should be permitted to exercise any governmental function within its limits. It is by these principles that we have to judge the Pearre deed.

By his will John Sifford devised his St. Clair county lands, of which the tract in controversy formed a part, to his son John E. Sifford and two others (the other trustees having died before the probate of the will, it is not necessary to bear them in mind in this connection) and to their heirs and assigns, in trust that they or the survivors or survivor of them sell and convey said lands and turn over the proceeds to his executors, to be distributed according to the provisions of his will. The will was probated and this trust accordingly became effective November 8, 1878. On October 31, 1887, John E. Sifford presented an *ex parte* petition to the circuit court of Maryland for Frederick county, a court of general law and equity jurisdiction then sitting in equity, declining to further execute his said trust and asking to be relieved of the same, and the court then made an order "that John E. Sifford be, and he is hereby, at his own instance, relieved of the trust referred to in the will of John Sifford, deceased, and that Aubrey Pearre be and he is hereby appointed trustee in his place and stead, for the same uses and trusts." It was under this authority that he made the deed; for although it recites his capacity as administrator with the will annexed, the defendants' counsel do not suggest that it adds anything to its effect. It must stand upon his title and power as an instrument of the Maryland court executing its orders in this jurisdiction or not at all. The respondent has favored us with citations of our own decisions, including Mc-Cune v. Goodwillie, 204 Mo. 306, to sustain the power of the trustee of the Maryland court to convey, if not to hold, the title to the Missouri land. They do not reach the question now under consideration. They simply hold that, the court having jurisdiction of the subject-matter of the suit and of the parties, the judgment will conclude them, even upon such questions as may affect their tenure of foreign lands. On the other hand, the jurisdictional line in such cases has been

closely drawn in the recent case of State ex rel. v. Grimm, 243 Mo. 667. It follows that the Pearre deed was ineffectual to transfer the title to the land in question.

III. Defendants Teetor, Darrow and Henry who alone answered, say that although the court held that the sale and conveyance by Pearre to Dade is void for want of power in the former as trustee under the will of Sifford to make it, and that there was therefore no actual conversion of the land into money, yet by the terms of the will an equitable conversion took effect at the time of the death of the testator. Although the respondents do not advise us as to the effect of this upon their own rights, the inference is that the land, the real subject of the litigation, has fallen from under the appellants, leaving them no foundation to stand upon other than some proceeding to secure the sale of the property in accordance with the terms of the will. As this question affects both the rights and remedies of the parties it requires consideration.

Conversion.

One may, by the provisions of his will, convert real estate into personalty whenever his plan of distribution of his estate among his creditors and the objects of his testamentary bounty requires it, and this is, perhaps, most frequently and simply done by an absolute requirement that the land be sold and the proceeds applied by the executor to the payment of debts and legacies, or for apportionment under the statutes of distribution among the next of kin. The conversion, that is, the change in the nature of the property from real estate to personalty, then takes place at the moment of the testator's death. It is subject, however, to be reconverted to its original character in various ways. One of these is by the election of the ultimate and absolute owner under the will, being at the time *sui juris,* before the sale of the land, to take it in its

original state. This is of course reasonable, for the right to make any lawful use of one's own is the fundamental idea of property. Reconversion also results from the failure of the purpose of the conversion; for if that purpose is or becomes impossible, unlawful or sometimes inexpedient, so that it cannot or ought not to take place, the fiction, which is a favor of the law, fails with the failure of its reason. [Underhill on Wills, sec. 715 et seq.] In this case the testator devised the land in controversy to his son John E. Sifford and his sons-in-law John Loats and John I. Boyd, "upon trusts that they, or the survivor or survivors of them, shall sell said lands in whole or in parts at public or private sale and upon such terms and at such time as they or the survivor or survivors of them shall deem most advantageous to my estate." This power is highly discretionary. It exhibits the most perfect confidence in the judgment, reliability and integrity of these three relatives and in each of them. One of the principal impressions we receive from the language quoted is that the personality of these men must have greatly influenced the testator in clothing them with so important a power, and that this confidence is an important element in the legal interpretation of this part of the instrument. The devise is also made "upon the further trust; and with full power and authority in them or the survivor or survivors of them to convey said lands when sold to the purchaser or purchasers," and upon the further trust to pay over the proceeds to his executors, to be distributed according to the provisions of the will. This trust consists of the naked power and duty to sell the land when and as they shall deem best and to turn over the proceeds to the executor for distribution. They are invested with the legal title for that purpose only. They have under the provisions of the will no right to the possession, direction or management of the land in any respect whatever, and by the failure of that use it reassumes its ori-

ginal quality as realty, and the legal estate only remaining in the trustees, it becomes vested by the Statute of Uses (R. S. 1909, sec. 2867) in the person or persons entitled to the equitable estate under the will, which was, in this case, during the lifetime of Mrs. DeLashmutt, Ann Josephine Pearre. Whether this situation arose at any time before the bringing of this suit is the question.

Three of the executors named in the will were named as trustees for the sale of these lands. A good reason for the exclusion of the other, Mrs. Loats, was that she was a married woman, which would introduce an unnecessary legal complication into the situation, as well as impress upon her a duty in connection with the sale of lands situated so far from her home which might be so onerous as to amount to an imposition; so that, in effect, a committee of the executors was invested with the legal title for the benefit of all; that is to say, for the performance of a duty for all in the collection of the estate. Had this power been vested in the executors themselves as such there can be no question that it must have been executed during their continuance in office or not at all. [Donaldson v. Allen, 182 Mo. 626, 647; Francisco v. Wingfield, 161 Mo. 542; Littleton v. Addington, 59 Mo. 275.] In the case we are considering it is the necessary intention of the testator to limit the power to the period included in the execution of his will, because its exercise was made a part of such execution and the money was to be paid to the executors for disposition in the performance of their official duties as such. The trust was evidently created because they could not perform those official duties in a foreign State, and to avoid the costs and intermeddling of strangers that would necessarily result from the appointment of ancillary administration with the will annexed in this State. It was evidently the intention that when the power of the executors to receive the money from their trustees should cease, the

De Lashmutt v. Teetor.

power of the trustees to raise it and pay it to them
should also cease. The Maryland court evidently had
this idea in mind when it attempted to appoint Mr.
Pearre, then sole administrator of the Sifford estate
with the will annexed, sole trustee for the sale of these
lands. When the activities of Mr. John E. Sifford
as trustee for the actual conversion of this land into
money for the benefit of the estate had ceased with
the extinguishment of the estate itself by final distri-
bution, settlement and discharge of the administrator,
the legal title to that part of the one-sixth interest in
the land remaining unsold passed to and vested, by the
terms of the will, in Mrs. Pearre, in trust for Mrs.
DeLashmutt during her life, and at her death, to con-
vey it all to her children. The Statute of Uses having
made this conveyance a work of supererogation, the
title to all lands constituting the one-sixth part of the
Sifford estate so held in trust for Mrs. DeLashmutt
during her life, became fully executed in her children.
The power of sale having died with its only object,
the sole surviving trustee also died and with him the
last of the instrumentalities of the trust disappeared.
We accordingly hold that at the time of the institution
of this suit, the title to the DeLashmut interest in such
of the Missouri lands as were unsold had vested in the
parties ultimately entitled to the estate under the will
free from the trusts created by that instrument in John
E. Sifford and his heirs and Ann Josephine Sifford, af-
terward Pearre.

IV. Perhaps the most difficult of the many inter-
esting questions presented in this record, arises upon
the plea of defendants that plaintiffs are
**Estoppel:** estopped in equity from disputing the va-
**Knowledge.** lidity of the sale because the one thou-
sand dollars for which the land was sold was accounted
for by Pearre as administrator of the John Sifford
estate, and was included in the final distribution, in

which one-sixth of the entire amount remaining in his hands, and in which it was included, was paid over by him to his wife as trustee for Mrs. DeLashmutt, upon whose death it was distributed among her children, including these plaintiffs.

We have already said that Mrs. Pearre's trust included no duty toward the DeLashmutt children other than to turn over the property to them upon the extinguishment of the equitable life estate of their mother. It then became her duty to account for and deliver to them the personal property. For this purpose she occupied no different position than would the administrator of the life tenant had no trustee intervened. As for the real estate, it automatically vested in fee in the life tenants as tenants in common, by force of the Statute of Uses. Being trustee of the life estate alone, she had at no time any power to bind the remaindermen or their title in any way that her beneficiary, the life tenant, could not have bound them by her acts had no trustee intervened. She could not, of course, dispose of the remainder by estoppel, or the ratification of a void deed, any more than she could do it by her own deed. She could not do by indirection what she had no power to do directly. The whole matter resolves itself into the question whether, as pleaded in the answer, the plaintiffs by receiving the money sent them by Mrs. Pearre in the spring of 1904 to apply upon their respective interests in that part of their grandfather's estate held by her for the use of their mother during her life, have estopped or otherwise disabled themselves from recovering their interests in these lands.

Equitable estoppel, or estoppel *in pais,* is that condition in which justice forbids that one speak the truth in his own behalf. The law has adopted the latter term from the old French *estoupail,* meaning a bung; and it indicates that in such a case one's mouth is plugged against the flow of truth. A healthy instinct

immediately suggests that it cannot be under all circumstances that one is deprived of the use of so clean a weapon, even in defense of his own. We do not have to go to the special books of the law for information on this point, for it is, as it should be, the learning of all. Webster, in his dictionary, defines "estoppel *in pais*" or "equitable estoppel" as that "which, when a party by his conduct or language has caused another reasonably to believe in the existence of a certain state of things, and (having a legal right so to do) to act upon the belief, precludes him from averring or setting up, to the prejudice of the latter, that a different state of things existed at the time in question." The act or conduct invoked as an estopped may be the simple failure of the one against whom it is invoked to speak when it is his duty to do so; but whether his conduct be the result of negligence or design, it may be corrected before the party invoking it has acted upon it to his prejudice. These elements of definition have been incorporated in all the law dictionaries where they may be found under the heading of estoppel. Nor do the textbooks overlook them. [Bigelow on Estoppel (3 Ed.), 484.] And the wealth of adjudication to the same effect in this court is, from the standpoint of right and justice, extremely gratifying. [Taylor v. Zepp, 14 Mo. 482; Newman v. Hook, 37 Mo. 207; Bales v. Perry, 51 Mo. 449, 453; Austin v. Loring, 63 Mo. 19; Acton v. Dooley, 74 Mo. 63, 69; Blodgett v. Perry, 97 Mo. 263; 273; Burke v. Adams, 80 Mo. 504, 514; Monks v. Belden, 80 Mo. 639, 642; Gentry v. Gentry, 122 Mo. 202, 221; Bank v. Ragsdale, 171 Mo. 168, 185; Spence v. Renfro, 179 Mo. 417, 422; Harrison v. McReynolds, 183 Mo. 533, 547 et seq.; Keeney v. McVoy, 206 Mo. 42, 57 et seq.]

In all these cases, except, perhaps, the first two, in which the point was not involved, it is held that another element must enter into estoppel. In the case last cited it was said by Judge LAMM for the court that

the act relied on must have been made with knowledge, actual or virtual, of the facts. In Harrison v. McReynolds, supra, Judge GANTT, in applying the same principle to a case of ignorance of her *legal* rights on the part of the one against whom estoppel was alleged, quoting from Acton v. Dooley, supra, said: "If no one has been misled to his hurt, if no injury has arisen from the conduct, declarations or silence of a party, he will not be estopped from contradicting them, even though they would be conclusive against his right if uncontradicted. . . . But there is no such thing as estoppel *in pais* for neglecting to speak or act when the party did not know the facts which if known would have made it his duty to speak or act." That case is instructive on the very point involved in this. In 1877 Mrs. Grubb was the owner of an interest in the tract of land involved in the suit, and joined with her husband in attempting to convey it to the plaintiffs, receiving full consideration therefor. By mistake in the description of the land the conveyance failed, and it was held by this court (in McReynolds v. Grubb, 150 Mo. 352) that it could not be corrected in equity. After the death of her husband it was asserted that Mrs. Grubb, while a widow, had received personal property in satisfaction of her claim for this same land and was estopped from asserting her title. In disposing of this point adversely to the claim, this court (p. 549) said: "Mrs. Grubb's title to the undivided one-fourth in the northwest of the southeast quarter, was of record, and directly in the chain of title of defendants from their father. By the slightest diligence they could have ascertained if Mrs. Grubb had conveyed her interest. The search to that extent would have disclosed the mistake which they claim was made, and before dividing the land they could have ascertained her rights. We have already ruled that neither a court of law nor equity could correct such alleged mistakes because Mrs. Grubb was at that time a married

woman and her estate a legal one and not her separate estate.'' This recognizes another well established rule applicable to such cases. The party invoking the estoppel must himself be ignorant of the title of the other. In Austin v. Loring, supra, this court expressed the same rule as follows: ''If no one has been misled to his damage, if no injury has arisen from the conduct, declarations or silence of a party, he will not be estopped from contradicting them, and a party will not be allowed to avail himself of an estoppel when he knew or had the same means of knowledge as the other party.'' We had also expressed the same idea in Bales v. Perry, 51 Mo. l. c. 453, as follows: ''If, therefore, the truth be known to both parties, or if they have equal means of knowledge, there can be no estoppel.'' And again in Spence v. Renfro, 179 Mo. 417, 422, we said: ''So if the facts be known by both parties, or if they have equal means of ascertaining them, there can be no estoppel.'' If one's deed be on record he may safely remain silent. [Spence v. Renfro, supra; Bales v. Perry, supra; Harrison v. McReynolds, supra.]

Although the defendants pleaded these matters as an estoppel in equity, they now say that the receipt of this distribution from their mother's trustee was a ratification or confirmation of the void sale by Pearre. Mr. Bigelow in his careful treatise, to which we have already had occasion to refer, says (p. 493) that the most acquiescence or ratification can do ''is to supply an element necessary to the estoppel, and otherwise wanting as, e. g., knowledge of the facts at the time of making the representation.'' This is a way of saying that, while ''estoppel by conduct'' may result from negligence in that concerning which we owe care to others, the first element in the making of contracts is the meeting of the minds of the parties. Whether they come into existence by adoption, acquiescence or ratification, or by the more ordinary process of origi-

nal execution, there must exist the ground of knowledge on which these may meet. To this ground each is held to contribute those matters peculiarly within his own knowledge. For example, should a man steal my horse, and come afterwards and sell it to me for cash, being able to do so because, perhaps, I had never seen the animal, or, had I seen him, could not recognize him, ought the law for that reason charge me with acquiescence in the theft? Would it be too much to say that in holding that I was estopped by acquiescence from denying the title of my vendor, the law would reduce itself to the position of an accomplice with the wrongdoer? Another example will recommend itself to the personal experience of every country lawyer who practiced in Missouri when its rural counties consisted largely of wild lands, owned by non-residents, many of whom were poor, perhaps soldiers of the Mexican war and their widows and children. In those days enterprising people kept agents in these counties whose names were household words as bidders at tax sales, and other agents in the field to look up and compromise with owners over whose titles they had spread the shadow of their purchases. Upon the enactment of the Revenue Law of 1877 the payment of the taxes was no longer a defense against the sale. When at the instance of the purchaser the owner was notified of the judgment and sale and that the surplus was awaiting him in the hands of the court, many of these who could not afford to obtain copies of the record and legal advice and relied upon the statements of those whose duty it was to inform them of the true facts, have been constrained to save from the wreck the little surplus. Is it right that upon ascertaining that they had been deceived and that the judgment had been a nullity, they should not be permitted to return the money to those who had deceived them, who had taken it knowing and concealing the facts, and retain their own? This question, it seems to us, answers itself; and it is

also answered by a line of authorities which are a credit to our jurisprudence.

V. Applying these principles to the case in hand. The plaintiffs, then little children, left Pennsylvania with their father and mother, Doctor DeLashmutt and wife, before their grandfather had written the will which made this small provision for them. They established their home at Shelburn, Indiana, where the family continued to reside up to the death of the mother in 1903, when, as we have pointed out, the property in question became vested in them under their grandfather's will. There is nothing in the record to indicate that either of them had ever seen their aunt's husband, Mr. Pearre, who sold the land in question, excepting on two occasions when he came west on his way to Missouri to look after these lands. He was not a member of the family when they left Pennsylvania. His talk with the DeLashmutts at the time of these visits is a matter of dispute. He says he told them that John E. Sifford had sold some of the Missouri lands and that he himself intended to sell the remainder; while they say he told them that Sifford had thrown away some of them, and that he was going to recover them. They all insist that they never knew nor heard that he had ever sold or attempted to sell any of the lands in Missouri until after the final distribution. Doctor DeLashmutt testifies that prior to any visit of Mr. Pearre to his home he had written to "the bondsmen" (meaning, no doubt, the bondsmen of the executor) "forbidding them selling the land or lands of John Sifford, deceased, away from the children."

On May 13, 1904, each of the plaintiffs on receipt of the funds expressed in it gave Mrs. Pearre a receipt in the following form:

"Received of Mrs. Anna J. Pearre, Trustee, one thousand nineteen 20/100 dollars, first installment of

my interest in the estate of my Grandfather, Jno. Sifford, deceased, inherited through my mother Cleanthea DeLashmutt.''

It is not even claimed that up to that time these parties had ever seen any letter, deed or other writing referring to the sale of any of these lands by Pearre.

On April 26, 1904, Mr. Pearre wrote J. S. DeLashmutt among other things as follows: ''I wrote you yesterday enclosing a quitclaim deed from Mo. This land was sold some twenty years since, and the money paid to us for it—the letter will explain. When this paper arrives, please execute it with Mrs. DeLashmutt and return—You will place me under obligation.'' This deed was to one Knowles, and covered a tract of the St. Clair county land that had been sold to him by John E. Sifford as trustee. The quitclaim was held by J. S. DeLashmutt for investigation, which so irritated Mr. Pearre that he wrote that if his statement was not worth believing or if they had to defend their interests from him, he did not care to continue his correspondence with them, and referred them to J. B. Egger at Appleton City, Mo.

This reticence and extreme sensitiveness to inquiry does not argue strongly in favor of the proposition that he was ready and willing to explain when called upon.

The young men took him at his word, came to St. Clair county, investigated the matter, and, without any unreasonable delay, as it seems to us, brought this suit. They find, as they say in their petition, that the purchase price paid for this land was included in the distribution of the Sifford estate and ask for an accounting in which their share shall be charged against them. There is nothing in the papers or correspondence attending the distribution of the DeLashmutt fund which indicates notice to the distributees that any part of it resulted from a sale of any part of these lands by

Pearre, and the testimony of the parties who know preponderates greatly against that conclusion.

That the defendants who answer and claim the land knew the character of the sale and conveyance under which they claim, and which appears fully of record, is not only a fact but a legal conclusion, which the law will not permit them to deny, and nothing can be more reasonable and just than the rule which denies them the right to shift the burden of their own carelessness to the shoulders of one innocent of all participation in the transaction, without a full disclosure of the facts. The plaintiffs say in their pleadings that they want nothing but to be reimbursed their loss through the illegal sale, and there is nothing more just than that this should be done by those who, with a knowledge, both actual and imputed, of all the facts, have received the property.

There is nothing in Hector v. Mann, 225 Mo. 228, nor in the line of cases it cites in its support, inconsistent with the view we have taken in this case. They simply hold that in case of execution and judicial sales a party to the suit who, with knowledge of all the facts affecting his rights, takes down a surplus of the purchase price coming to him from the sale on the theory of its validity, thereby ratifies the proceeding to the extent of the part so adopted. The principle does not apply to this case.

VI. We have already in the previous paragraph disposed of the Statute of Limitations pleaded by the defendants upon the theory that John E. Sifford and Mrs. Pearre were active trustees for the DeLashmutt children so that the statute running against them or either of them operated vicariously upon these plaintiffs. There having been no such relation, as we have already shown, the conclusion founded upon it falls. The plaintiffs are, therefore, not barred.

The judgment of the St. Clair Circuit Court is reversed and the cause remanded with directions to proceed to an accounting and final judgment in accordance with the views herein expressed.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All of the judges concur, *Bond, J.,* in result.