UNION PACIFIC RAILROAD COMPANY v. THE PUBLIC SERVICE COMMISSION, Appellant.

Division One, July 18, 1916.

1. PUBLIC SERVICE COMMISSION: Powers Relating to Interstate Commerce: Fees. Where an interstate railroad company has applied to the Public Service Commission for authority to issue its bonds secured by a mortgage on its properties and has obtained an order authorizing it to do so, and while retaining the benefits of the order denies its liability to pay the fees which the statute prescribes, and the only matter for determination is the amount of the fees that can be charged for the order, the questions of the power of the commission to take cognizance of the issue of bonds by an interstate railroad and of its jurisdiction over interstate commerce are not for decision.

2. ——:˙ Incumbering Real Estate by Foreign Corporation: Limitations Prescribed by Incorporating State. It is incompetent for a foreign State under whose laws an interstate railroad company has been incorporated, to direct how its real estate within the jurisdiction of this State shall be conveyed, incumbered or diverted from the use to which it has been devoted by our laws.

3. ——: Advantages of Validation of Bonds. There are many reasons, aside from an escape from the penalties prescribed by the Public Service Commission Act for issuing bonds without authority from the commission, why an order from the commission validating and permitting the sale of a large issue of bonds secured on the real estate of the interstate railroad company, situated in this State and elsewhere, would be of great value to the company in selling the bonds, although the amount of the bonds far exceeds the value of its real estate in this State.

4. ——: Fees to be Charged for Bond Issue: Tax. The fees fixed by the Public Service Commission Act to be charged a corporation for validating its bonds, are primarily to reimburse the State for the maintenance of the commission, and are in no sense a tax in the ordinary meaning of the term. The statute affords the only rule for the guidance of the commission for fixing the amount of the fee, in any case; and where the assessment for a certificate authorizing the issue of bonds is made in exact accordance with the legislative direction, that assessment must stand, even though the applicant for the certificate is an interstate railroad company and the amount of validated bonds far exceeds the value of its properties situated within this State.

5. ——: ——: Paid Under Protest. Where statutory fees are paid by an interstate railroad company to the Public Service Commission for an order authorizing it to issue and sell its bonds, such order being made in response to its own application therefor, the payment of the fees cannot be avoided, though made under written protest.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,* Judge.

Reversed and remanded (*with directions*).

*Wm. G. Busby* and *Alex Z. Patterson* for appellant.

(1) The circuit court committed reversible error in finding that respondent was not barred and estopped from denying the authority and capacity of the appellant to approve respondent's bond issue, after it had expressly recognized such authority and capacity by its application and proceeding for such approval and by its formal acceptance of appellant's certificate of approval. 8 Cyc. 791; 6 Ruling Case Law, pp. 94, 95; State v. Collins, 225 Mo. 633; State v. Seebold, 192 Mo. 720; Sheppard v. Barron, 194 U. S. 553; Ficklen v. Shelby County, 145 U. S. 1; Mfg. Co. v. Garland, 124 U. S. 581; State v. Railroad, 75 N. H. 327; White v. Manning, 46 Tex. Civ. App. 298; Ferguson v. Landrum, 5 Bush (Ky.), 230; Gans v. Railroad Co., 114 Iowa, 713; Hansford v. Barbour, 10 Ky. 515; State v. Stone, 46 La. Ann. 147; Weir v. Railroad, 18 Minn. 155; Railroad v. Railroad, 123 Iowa, 543; Hudson v. Brown, 154 N. Y. Supp. 131; Green County v. Lydy, 172 S. W. 376; Lewis v. Chamberlain, 139 Pac. (Ore.) 571; In re Devlin v. Judah Co., 107 Pac. 583. (2) Section 57 of the Public Service Act applies to both domestic and foreign railway corporations, since it, together with the other four sections of the Public Service Commission Law relating to the regulation by the commission of the issuance, sale and holding of bonds and stock by railway corporations, all have the same general purpose, and in construing one the others should be read in connection with it, as together constituting one law creating a uniform and connected system. Sections 54, 56, 57, 58 and 59, Public Service Commission Law; Curtwright v. Crow, 44 Mo. App. 563; Swinney v. Railroad, 59 Ind. 205; Smith v. People, 47 N. Y. 330; 36 Cyc. 1151. (3) The sections of the Public Service Commission Law relating to re-

gulation of issuances, sales and holdings of bonds, stock and other securities by interstate carriers are not unconstitutional as violative of the commerce clause of the United States Constitution. Railroad v. Georgia, 135 Ga. 545; Railroad v. New York, 165 U. S. 625; Laird v. Railroad, 121 Md. 179.

*R. W. Blair* and *I. N. Watson* for respondent.

(1) The respondent is not estopped from questioning the amount of the fee because the payment was made under duress and was involuntary. Ex parte Young, 209 U. S. 123; Railroad v. Tucker, 230 U. S. 340; Trust Co. v. Railroad, 216 Fed. 225; Railroad v. O'Connor, 223 U. S. 280; Swift Company v. United States, 111 U. S. 22; Ins. Co. v. Herriott, 80 N. W. 665. (2) Section 57 of the Public Service Commission law applies only to domestic corporations. Tel. Co. v. Kansas, 216 U. S. 27; Railroad v. Pennsylvania, 136 U. S. 114. (3) Sections 21 and 57 of the Public Service Commission Law are unconstitutional and void insofar as they are construed to apply to corporations engaged in interstate commerce: (a) As being in violation of the commerce clause of the Constitution by the imposition of an illegal burden upon interstate commerce; and (b), because violative of the fourteenth amendment to the Constitution and its due process of law clause as in effect taxing property situated beyond the jurisdiction of the State. Fargo v. Michigan, 121 U. S. 230; Ratterman v. Tel. Co., 127 U. S. 411; Railroad v. Pennsylvania, 136 U. S. 114; Crutcher v. Kentucky, 141 U. S. 47; Allen v. Pullman Co., 191 U. S. 171; Tel. Co. v. Massachusetts, 125 U. S. 530; Pullman Co. v. Pennsylvania, 141 U. S. 18; Tel. Co. v. Taggart, 163 U. S. 1; Maine v. Railroad, 142 U. S. 217; Tel. Co. v. Kansas, 216 U. S. 1; Transit Co. v. Kentucky, 199 U. S. 194; Railroad v. O'Connor,

223 U. S. 280; Laird v. Railroad Co., 121 Md. '179; Halsey & Co. v. Merrick, 228 Fed. 805; Bracey v. Darst, 218 Fed. 482; Wm. R. Compton Co. v. Allen, 216 Fed. 537; Transportation Co. v. Doyle, 210 Fed. 173. (4) Sections 21 and 57 of the Public Service Commission Law should be construed so as to sustain in part their constitutionality by applying them only to property situated within the State and to corporations not engaged in interstate commerce.

BROWN, C.—The Union Pacific Railroad Company is a Utah corporation. Its principal office is in New York City. It owns and operates about three thousand five hundred miles of railroad in the States of Iowa, Nebraska, Wyoming, Utah, Colorado, Kansas and Missouri, its main lines extending from Kansas City, Missouri, and Council Bluffs, Iowa, by way of Cheyenne, Wyoming, to Ogden, Utah. It was constructed more than twenty-five years ago and has been used for the transportation of freight and passengers from, to, through and between those states. It has about six-tenths of a mile of main track in Missouri, extending from the Kansas state line to the old Union Depot in Kansas City, and also has side tracks, freight house and other terminals upon its own lands in said city, all being of a value which it estimates at $3,058,893.29. The book value of its entire property investment on June 30, 1914, was $281,057, 730.06.

Of date June 1, 1908, it executed a "first-lien refunding mortgage" of all its property, securing a proposed issue of two hundred million of first-mortgage four per cent bonds, one hundred millon of which were to be used in refunding a like amount outstanding of old first-mortgage bonds. None of the refunding bonds were issued, leaving the first mortgage still in force as a first lien. Of the re-

maining one hundred million, sixty-five million eighty-five thousand six hundred and forty dollars had been issued prior to June 1, 1910. On September 4, 1914, the company made application to the Public Service Commission of Missouri for permission to issue $31,848,900 more of bonds secured by said new mortgage, to reimburse it for expenditures made upon the property for purposes authorized by the mortgage, $124,930.38 of which had been expended upon the Missouri property. On September 22, 1914, the appellant commission, after a hearing, made its order, granting a certificate authorizing the issue of said bonds as applied for, taxed the amount of its fee to be charged for the issuance of said certificate at the sum of $10,962.25, which was the amount provided by the terms of section 21 of the Public Service Commission Act of March 17, 1913, on the full amount of bonds covered by said application. On the next day the secretary of the commission transmitted copies of the order to respondent's attorney at Topeka, Kansas, accompanied by its statement of the amount of fee taxed therefor as above stated, which order was afterward accepted by respondent in writing as follows: "Comes now Union Pacific Railroad Company, by A. L. Mohler, its president, duly authorized, and hereby accepts the order of the commission, dated September 22, 1914, in the above entitled cause, and agrees to obey the terms of said order." The respondent paid the said sum of $10,962.25, the amount of the fee so assessed, after offering to pay the sum of $125 based upon the proportion the amount so expended in Missouri bore to the whole amount of the bonds to be issued, which offer was refused by the commission. It then offered to pay $250, the minimum fee authorized by the statute, which was also refused. At the same time it made the following protest in writing:

"Union Pacific Railroad Company hereby pays under protest the sum of $10,962.25, being the amount of fees assessed and demanded for certificate authorizing the issue by said company of $31,848,900, face value, of additional first lien and refunding mortgage bonds.

"Protest is made upon the grounds:

"1st.   That said assessment is not authorized by the Public Service Commission Law of the State of Missouri, approved March 17, 1913, under which it purports to have been made; and,

"2nd.   That if such assessment is authorized by said statute, said statute and said assessment are in conflict with the Constitution of the United States and the amendments thereto, in that they impose a burden and tax on the interstate business of said company, and a burden and tax upon said company's property beyond the limits of the State of Missouri.

"And you are hereby notified that this payment is made involuntarily and under duress, and without waiving the assertion and claim that the assessment is illegal, unauthorized and void, and such payment is made solely to escape the penalties prescribed and to prevent the revocation of the certificate issued herein, and to enable said company to issue and sell the bonds referred to in said certificate which are necessary to the carrying on of the business as a common carrier.

"You are further notified that a petition for rehearing of the decision fixing the fees herein at the sum of ten thousand nine hundred and sixty-two dollars and twenty-five cents ($10,962.25) will be immediately filed and such further proceedings will be taken as are necessary to recover such sum less the sum of one hundred and twenty-five dollars, this day tendered as the legal fees herein, and you are further respectfully notified not to disburse the money here-

by paid until the legality of the fees are finally determined.''

It then immediately filed its motion for a rehearing upon said assessment of the fee, which was overruled by respondent and the record was then taken by writ of review as provided in section 111 of the Public Service Commission Act, to the circuit court for Cole County, where, upon hearing, it was considered and adjudged that the order of respondent "fixing the fee for the issuance of bonds by the plaintiff Union Pacific Railroad Company, amounting to $31,848,900, at the sum of $10,962.25, was and is unreasonable and unlawful," and the said order was therefore set aside by the circuit court, which fixed the fee to be paid by the respondent at $250, the minimum fee provided by said section 21 of the act, and remanded the cause to the appellant commission, with directions to enter its order fixing the fee at that amount.

It is from this order that the present appeal is taken.

I.  The respondent railroad company has furnished us with an elaborate argument as to the power of the Public **Public Service Commission: Power Relating to Interstate Commerce.** Service Commission, under the terms of the statute which created it, to take cognizance of the issue of these bonds, and also upon the power of the General Assembly to confer such jurisdiction, as affected by certain provisions of the Federal Constitution relating to interstate commerce and the property rights guaranteed by the first section of the Fourteenth Amendment to that instrument. However interesting these questions may be, we must not lose sight of the nature and scope of the proceeding in which they are presented.

It was instituted by the presentation to the appellant commission of an elaborate petition setting forth at length the organization of the respondent, its financial condition and the purpose for which it desired to issue the bonds in question, and asking authority of the commission for that purpose. It does not question the constitutionality of the provision of the Public Service Commission Act which the petitioner was invoking for that purpose, nor intimate that the commission was without authority to grant it the desired relief. What it wanted was such authority as the commission could grant under the act, for the purpose, as it now explains, not only of protecting itself and its agents from penalties provided in the act, but to give value to the securities by such evidence of their validity and security as the inquiry and action of the commission might afford. The respondent obtained and accepted the coveted order, and made no attempt to have it vacated or modified in respect to the authority it granted, but while retaining its benefits denies its liability to pay the amount which the act prescribes as compensation to the State for the issue of the certificate. Even its motion for a rehearing before the commission is confined solely to the assessment of the fee, so that both parties agree that the only question in this appeal is whether the respondent should be required to pay the sum of $10,962.25 as assessed by the commission, or $250, as determined by the circuit court by the judgment from which this appeal is taken. The respondent has elected, without protest, to submit itself to the jurisdiction of the commission, and is satisfied with the judgment of the circuit court. It desires to obtain the endorsement of the appellant commission as cheaply as it can,

and the price is the only thing with which we have to deal.

II. It is true that respondent now suggests that it would not have applied for this order but for the stringent provisions of the Public Service Commission Act. This may be true, but we can see in the record many reasons why it might have desired the endorsement of the State as to this security even had no penalty been imposed by the act. It has more than three million dollars worth of real property in the State acquired by authority of a statute which imposes the condition that it shall be subject to all the duties, liabilities and provisions of the laws of this State concerning railroad corporations as fully as if incorporated in this State. [R. S. 1879, sec. 790.] It was incorporated under the laws of Utah, from which it takes its general powers. While we have no doubt that the Congress of the United States might constitute corporations in the exercise of its constitutional powers with reference to commerce between the States, we do not think it has ever been contended that it might carry the laws of one State into the jurisdiction of another without giving them its own authority by re-enactment. It is incompetent for Utah under any guise to direct how real property within the jurisdiction of this State shall be conveyed, incumbered, or diverted from the use to which it has been devoted by our laws. As we said in the late case of De Lashmutt v. Teetor, 261 Mo. 412, l. c. 433-4: "It is not to be conceived that any government would permit the title to the lands which constitute the foundation and define the territorial limits of its sovereignty, to depend upon the operation of the laws of any foreign state or nation.

*Payment of Fees Under Duress.*

Railroad v. Public Service Comm.

Real estate transfers of every description, whether by act of the parties or by operation of law, depend, for their validity and effect, upon the laws of the jurisdiction in which the property is situated.'' In this case it is sought to incumber this three million dollars worth of property by a mortgage of thirty-one million dollars and its validity and conformity to the provisions of our own laws would evidently receive valuable support from the sanction of the State through its own agency, at least so far as the Missouri security goes. In this particular case a property of the book value of two hundred and eighty-one million, of which the Kansas City terminal was a part, was already incumbered with mortgages to secure bonds amounting to more than one hundred and sixty-five million dollars, to which this thirty-one million was to be added. Its capital stock outstanding consisted of more than two hundred and twenty-two million dollars of common stock and about one hundred million of preferred stock. The bonds in question were to go into the treasury of the company to reimburse it for moneys that it claimed to have expended during the preceding five years for betterments, but whether this money had come from its earnings or from speculation or from former issues of bonds and stocks neither the lawyers before the commission nor its auditor who was present knew. The common stock had while this thirty-one million dollars was being expended, paid dividends amounting to one hundred million dollars, while the preferred stock had paid dividends amounting to twenty million dollars. Under these circumstances who shall say that it was not of interest to the purchaser of these securities, as well as to the State, whether these betterments had been paid for from capital already applicable to that use or

from earnings, and the opinion of the commission, expressed in its order, that the bonds came fairly within the provision of the mortgage would not be of advantage in their disposition?

III. The fee fixed by law for this inquiry is primarily to reimburse the State for the maintenance of the commission **Fees of Public Service Commission.** and is in no sense a tax in the ordinary meaning of that term. The Legislature has seen fit to distribute this burden upon a plan having reference to the value and importance of the services, which are highly technical in their nature. The matter lay in its constitutional discretion, and the plan adopted was clearly within that discretion and is embodied in section 21 of the act, which, so far as it refers to this particular fee is as follows:

"The commission shall charge and collect the following fees. . . . For certificate authorizing an issue of bonds, notes or other evidences of indebtedness, one dollar for each thousand dollars of the face value of the authorized issue, or fraction thereof, up to one million dollars, and fifty cents for each one thousand dollars over one million dollars and up to ten million dollars, and twenty-five cents for each one thousand dollars over ten million dollars, with a minimum fee in any case of two hundred and fifty dollars." [Laws 1913, p. 567.]

The assessment was made in exact accordance with this legislative direction, which affords the only rule for the guidance of the commission. The powers of the commission having been invoked and exercised under the act which created it, we must look to the act for the terms imposed. The assessment of the commission must, therefore, be sustained.

IV. We have already held that the respondent, having without protest, or question, availed itself of the privileges and immunities incident to compliance with the Public Service Act at the expense of the State, cannot now deny the existence of the power which it invoked, for the sole purpose of avoiding the payment of the fee fixed by the Legislature for the same services before it requested their performance. We have also held that this fee was fixed by law in the reasonable exercise of the legislative discretion, and is therefore reasonable and proper, and must now be paid. It remains to notice in a general way, the cases cited by the respondent.

These may be divided into four classes: (1) those like the Missouri case of Westlake & Button v. St. Louis, 77 Mo. 47, in which we properly held that where a water rate greater than that permitted by law had been paid under business duress, the *excess* might be recovered back; (2) those cases in which equity is invoked on the ground that the remedy at law is rendered burdensome and dangerous by the pains and penalties by which it is jeopardized; as in the late cases, of which Ex parte Young, 209 U. S. 123, is typical; (3) those cases in which it is sought to enforce such excessive penalties; as in Railway v. Tucker, 230 U. S. 340; and (4) those cases in which, as in Railway v. O'Connor, 223 U. S. 280, it is sought to recover back illegal taxes paid with protest under duress of the pains and penalties and business annoyance and injury which might result from permitting them to remain apparent charges against property. It is plain that such cases have no relation to a case in which it is sought to avoid paying to the State the statutory fee for services performed at the request of the complaining party,

relying upon its own judgment as to their legal necessity or desirability.

The judgment of the circuit court for Cole County is reversed and the cause remanded to that court with directions to affirm the action of the Public Service Commission in assessing the fee to be paid by the , respondent at the amount of $10,962.25.

*Railey, C.,* not sitting.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All the judges concur except *Woodson J.,* not sitting; *Bond, J.,* in result.